N. C. GULLETT ET AL. V. THOMAS O'CONNOR.

(Case No. 1250.)

1. PRACTICE — DISCLAIMER.— Though a formal judgment should be rendered in the district court on the disclaimer of a party defendant, as to such defendant, yet if the cause proceeds to trial and judgment without further notice of the defendant who disclaims, the supreme court will, on appeal, regard the action as having been dismissed as to him, notwithstanding the failure of the record to show the fact.

2. LOCATIVE CERTIFICATE.— An unconditional headright certificate, issued by the board of land commissioners for Jasper county, January 9, 1840, and approved by the traveling board, which during the same year was surveyed, and the survey returned to the general land office, conferred upon the owner thereof a title to the land covered by the location superior, to that resulting from a junior location and patent made and issued in 1877.

3. SAME — STATUTE CONSTRUED.— The right to appropriate public land under such certificate, became by its location, survey and return to the general land office, vested before the repeal of the act authorizing a patent, which vested right has never been forfeited or annulled.

4. SAME.— If further legislation was necessary to authorize the issuance of a patent on such location, the failure to legislate did not affect the right secured by the prior location and survey, and cannot aid a patent issued on a subsequent unauthorized location of the same land by another party.

5. PATENT — CONSTITUTIONAL LAW. — Though the issuance of patent on the junior location was in violation of the constitution, the patent is voidable only. It may be cancelled and annulled: 1st. At the suit of a party having a prior equitable title. 2d. The legal title vested by the patent may, in a proceeding in equity, be divested out of the patentee, and vested in the prior and better equitable right; but no one but he who is connected with, or holds and claims under, the prior equitable title, can impeach the patent issued on the junior location or resist a recovery of the land by the patentee, by reason of the superior equity of the prior locator.

6. FACT CASE. — See opinion for facts in favor. of one in possession, and claiming title under the prior location, and against a subsequent patentee, on which a presumption would arise that would enable him to defend successfully, though unable to connect by regular conveyance with the prior locator.

APPEAL from Victoria. Tried below before the Hon. H. Clay Pleasants.

Suit in trespass to try title by Thomas O'Connor against N. C. Gullett and his wife and John T. Allan. Allan disclaimed all interest in the land, and Gullett and wife pleaded "not guilty."

O'Connor claimed under a patent issued to F. L. Wren, assignee of Francisco Cassanova, which issued on the 7th of April, 1877. The location and survey of the certificate were made during the same year in which the patent issued. O'Connor showed a regular chain of title from Wren to himself.

Gullett and wife claimed the same land by virtue of locations and surveys made thereon in the year 1850, by certificates issued, one to Thomas Scott and another to Pierce Rollins, each bearing date January 9, 1840, and certifying that the party was entitled to an unconditional certificate for 1,280 acres of land. The certificates were issued by "Martin Parmer, Ch. Jus. Co. Co. of Jasper County, and *ex officio* President of the Board of Land Commissioners, and W. S. Stark, Asst. do."

The surveys were made during the same year in which the locations were made, and were returned to the gen-

eral land office prior to June 15, 1853. The locations were made by D. C. Osborn, under whom the appellants, Gullett and wife, claimed title, but there was a missing link in the chain of title between the grantees of the certificates and Osborn.

Appellants were in possession of the land when the suit was brought.

*Stayton, Lackey & Kleberg,* for appellants.

*Callender & Glass,* for appellee.

I. As to the question whether the patent issued to Wren is absolutely null and void under the second section of the fourteenth article of the constitution, we would say:

1. Patents have never heretofore, so far as we know or have been able to learn, been held absolutely void, merely because they were granted for lands already appropriated by valid locations. We submit that an examination of the cases will show, that where a patent has been held absolutely void by this court, it was so held because it was issued for land lying in some territory withheld or withdrawn from location, such as islands, railroad reservations, etc., and where the patent would have been equally void whether there was a prior location or not; or where the issuing of the patent was done in direct violation of a statute forbidding the same to issue, and declaring that if issued it should be null and void — such as patents issued upon locations of unrecommended certificates, or issued upon locations upon surveyed or titled lands within Austin's, De Witt's or De Leon's colony. We have found no case where a patent was held void because it conflicted with a prior location, and where it would have been valid if the prior location had been out of its way.

2. The law has always contemplated that locations should be made only upon vacant public lands, and that

patents should issue only upon locations made upon lands not appropriated by previous locations (Pasch. Dig., arts. 4286, 4299, 4300); and the courts have often held patents to be relatively void or inoperative, when they conflict with prior valid locations. Thus, for example, in Wyllie v. Wynne, 26 Tex., 42, it was declared that a patent could confer no right if the land had previously been legally appropriated by some other person than the patentee. Still such a patent has not been regarded as void, but as *prima facie* valid. Thus it was said in the case of Johnson v. Elbridge, 49 Tex., 520, 521, "It is a familiar and well established rule of the courts of this state, that a prior, valid and subsisting location and survey will prevail over a subsequent location and patent, but certainly the patent carries with it at least a *prima facie* right to the land thereby granted by the state to the patentee; and to rebut this presumption, it devolves upon the adverse claimant to clearly establish a prior or superior equitable right."

Did the constitution of 1876 intend to overthrow this "well established rule," and make those patents absolutely void, which had previously been *prima facie* good, though inoperative and relatively void when they came in conflict with prior valid locations? We think not.

(1) It seems more reasonable to assume that the framers of the constitution only intended to express in that instrument, what had long been the rule of the law, that locations could be legally made only upon vacant land; and that if made upon land previously appropriated by valid locations, they should not prevail when they came in conflict with such prior rights.

(2) To hold that a patent is absolutely void because the land was covered by a prior valid location, is to produce such changes in the law of real property as cannot reasonably be supposed to have been within the intent of the framers of the constitution. Many tracts of land are now supposed to be safely held under junior patents, and

junior locations, and under titles derived from such patents or locations, accompanied by three years' adverse possession — the junior patent or junior location in each case being the first link in the title or color of title which claimants deraign from the sovereignty of the soil.    But a void patent or a void location — a nullity — cannot be title nor color of title (Smith *v.* Power, 23 Tex., 33; De Leon *v.* White, 9 Tex., 609; Lambert *v.* Weir, 27 Tex., 364); and thus the three years' limitation — one of the "statutes of repose" on which many titles rest — is in nearly all cases swept away.    For it can rarely happen that evidence of the prior appropriation, such as it may be, will not be found on the "county records," or in the general land office.    The junior title generally arises from the fact that the prior appropriation is considered invalid. If it was really invalid, the junior title does not need the protection of the three years' limitation.    But if it was valid, and the junior title needs the protection, then the protection is taken away by the construction contended for, if there was constructive notice of the prior location; but it is left to the claimant under the junior title in the few and less meritorious cases where he had actual instead of constructive notice.    If he had no notice of any kind, he is protected as an innocent purchaser for value, and needs no protection from limitations.    15 Tex., 414.

(3) There has been for many years a provision of law, that where a patent had been by mistake issued so as to conflict with an older title, it might be returned and cancelled and the certificate returned, etc.    Pasch. Dig., art. 4301.    The Revised Statutes, enacted in 1879, and under the present constitution, also provide (art. 3965) that a patent issued by mistake, and found to conflict with an older title, may be returned and cancelled and a new certificate be given to the owner; but he must produce the patent, or show legal evidence of his title to it, and in any case he must file an affidavit that he is still the

owner, and has not sold it. Why contemplate the possible issuing of such patents, if they must be absolutely void? Why produce or prove the ownership, or negative the sale of that which is merely a nullity? Of that which is no better than blank paper, and can neither help nor harm any man's right?

(4) If the framers of the constitution, or the commissioners and legislature who incorporated the clause of the constitution we are now discussing into the Revised Statutes (art. 3977), had intended that patents issued upon locations made contrary to the directions of that clause, should be absolutely null and void, is it not reasonable to suppose that they would have so declared in unmistakable words? When the legislature forbade the location of certificates upon titled or surveyed lands in the colonies of Austin, De Witt and De Leon, it expressly prohibited the commissioner of the general land office from issuing patents on any such locations, and declared that, if issued, they should be null and void. Hart. Dig., art. 2269. Here there is no prohibition upon the commissioner — neither in the constitution nor in the Revised Statutes; nor is there any declaration that patents, if issued, shall be null and void.

(5) The power and duty are still left with the commissioner of considering and deciding whether or not the land for which a patent is sought, has been appropriated by a valid location prior to that of the applicant; and his jurisdiction to decide this question cannot depend upon the correctness of his decision. That would be as unreasonable as to hold that a court had jurisdiction only when it committed no error. Having then the power to decide, and the duty of deciding, his decision must be *prima facie* right, if the land lie in territory subject to location, and if the patent will convey an indefeasible title, provided there be no prior valid location in the way. And when the patent is issued, it vests the patentee with the

legal title, and is *prima facie* evidence that it was within his power, and that every prerequisite had been performed. Com'r *v.* Smith, 5 Tex., 479; Styles *v.* Gray, 10 Tex., 503; Todd *v.* Fisher, 26 Tex., 239, 242; Johnson *v.* Elbridge, 49 Tex., 520; O'Neal *v.* Manning, 48 Tex., 403; Johnson *v.* Smith, 21 Tex., 728; Polk *v.* Wendal, 9 Cranch, 98, 99; Patterson *v.* Winn, 11 Wheat., 380; Wilcox *v.* Jackson, 13 Pet., 498, 516; Shepley *v.* Cowan, 1 Otto, 300, 339, 340.

II. We cannot think there is any presumption, from the fact that Osborn located the certificates, that he owned any interest in the land. The only presumption that could arise is, that he was entitled to a money compensation for his services. 28 Tex., 152, 153. If it had been shown that there ever was any contract, promise or expectation that the owners of the certificates would transfer the land, or any interest in it, to Osborn, there might be some ground for presuming that what was contracted, promised or expected, had been done; but how can lapse of time raise the presumption that that has been done which does not appear to have been ever promised, expected, or even thought of? Time raises the presumption that Osborn has long since been paid for his services in making the location, and has not even a money claim upon the owners of the certificates. It does not appear that he ever had possession of the certificates except just at the time when it may be inferred that he delivered them to the surveyor. It appears that the certificates were returned with the surveys to the general land office, where they have since remained, continuing all the time, so far as appears, to be the property of the Rollins and Chaplin, respectively. Osborn does not appear to have ever had possession of the land, or any connection with it, except to sell it as his own property, without any right or authority. There was no possession of the land by any one until shortly before the institution of this suit; and no fact of any sort, from which it could be inferred

that the owners of the certificates knew anything of Osborn's sale of the land, or of any one claiming it under him.

MOORE, CHIEF JUSTICE.— A judgment should have been entered in the court below on the disclaimer of the defendant Allan. The failure, however, to do this, was a mere formal defect, which can work no injury to the real parties to this controversy. Subsequent to the filing of his disclaimer, Allan was seemingly treated and regarded by the parties and the court as no longer a party, and the case proceeded to trial and final judgment between the real parties, without further notice to him. Under these circumstances, we think we are authorized by former decisions of the court to regard the action as dismissed or discontinued as to him, notwithstanding the failure of the record to show this in express terms. 8 Tex., 124; 5 Tex., 139.

We concur with the court below that the title to the land in controversy under the location of the Rollins and Scott certificates, was superior to that shown by appellee. Admitting that the law did not at the date of these certificates authorize the issuance of unconditional certificates unless the conditional certificates had been previously issued, which, however, we are not now called upon and do not undertake to decide, this objection to the certificates was obviated by the subsequent law allowing this to be done, by the approval and recommendation of the certificates for patent by the board of commissioners appointed under the act to detect fraudulent certificates, and to provide for issuing patents to legal claimants, and the act of May 12, 1846, authorizing the commissioner to issue patents upon unconditional certificates.

Nor did the repeal of this last mentioned act (if indeed it was repealed by article 1135, as claimed by appellee) in any way affect the validity of the location, survey and

return of these certificates.   The right to appropriate public land under these certificates, became, by their location, survey and return to the general land office, vested before the repeal of the act authorizing their patent.   And this vested right had never been forfeited or annulled, but, on the contrary, seems to be recognized and protected by section 2, article XIV of the constitution of 1876.   If further legislation is necessary to the issuance of patents upon them, this may be had whenever it suits the pleasure of the legislature to supply it.   The mere delay or failure of the legislature to legislate on the subject, does not forfeit or annul the rights secured to the parties entitled to the certificates by their location and survey, and gives no additional strength to a patent upon a subsequent unauthorized location of the land by another party.

I also concur in the opinion of the court below, that while the subsequent location of the land by the party under whom appellee claims, was unauthorized, and the commissioner was forbidden by the constitution from patenting it upon such location, still the patent when issued is not absolutely null and void.   It is voidable, or as it is often phrased, void, as to those having a prior and superior equitable right to the land.   It may be cancelled and annulled by or at the suit of the party having prior equitable title to the land, and a new patent issued in lieu thereof to him.   Or the legal title vested by such patent may, by a court of equity, be divested out of the patentee, and vested in the holder of the prior and better equitable right.   But as the patent is not void in the strict and absolute sense of the word, I think with the court that it is well settled that none but such as appear in some way connected with, or hold and claim under the prior equitable title, can impeach the patent or resist a recovery of the land by the patentee, by reason of the superior equity of the prior locator.   Portis *v.* Hill, 14 Tex., 69; Burleson *v.* Burleson, 28 Tex., 383; Shields *v.* Hunt, 45

Tex., 424; Johnson *v.* Timmons, 50 Tex., 521; Fitch *v.* Boyer, 51 Tex., 336.

But conceding the correctness of the conclusions of the court below upon the question of law on which it based its judgment, we cannot concur with it in its application of them to the case presented by the record. On the contrary, we think the facts are amply sufficient to entitle appellant to rely upon and show the superior equitable title to the land acquired by the location and survey of the Rollins and Scott certificates over the legal title of appellee. In 1850, at the date of the surveys, the certificates were in the possession of D. C. Osborn, for whom (so the field notes show) they were surveyed, and who, we are authorized to infer, paid for the survey, and caused the return of the certificates and notes of survey to the general land office, for himself or those he represented. The certificates until location were personal property, and were subject to transfer or sale by parol. Or the better title to them may have been acquired by open, notorious, adverse claim, brought to the knowledge of the previous owner, by limitation. Or an interest in the land may have been acquired by a parol contract for their location. The appellees were in possession of the land at the institution of the suit, holding, claiming and enjoying it under a regular chain of conveyance from Osborn, and though something more than thirty years had elapsed from the date of surveys and return of the field notes to the general land office, and forty years from the issuance of the certificates to the trial of the suit, neither the land or certificates seem ever to have been claimed by Rollins or Scott, or any one else in their right except Osborn, and those claiming under him. Conceding the length of actual occupancy by appellees may not have been such as to give title by prescription, or bar an action for the land, still the facts are amply sufficient to warrant the presumption, if not of absolute title to the land, at least against a stranger, that

appellees were in possession for, or in right of, and with the consent of the true owners, or some of them, of the land. And if such was the fact, they had the right for the protection of their possession to show the superiority of the equitable title under which they were holding over the legal title of appellant. Wright *v.* Thompson, 14 Tex., 558.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered February 4, 1881.]