### J. N. MONTGOMERY V. G. C. GUNTHER.

#### No. 6966.

1.    **Limitation Between Individuals.**—In absence of testimony to the date of a location or survey limitation between parties will not run in favor of an adverse possession until the patent therefor is issued.

2.    **Extent of Adverse Possession.**—Actual possession of a survey will not affect the title of an adjoining survey although located under the same certificate, and the line between the surveys be not marked, and the possessor had marked lines around both surveys as boundaries of his claim under his possession.

3.    **Limitation of Ten Years.**—See facts held insufficient to confer title by possession under the statute of limitation of ten years.

APPEAL from San Saba.    Tried below before Hon. W. D. Williams, Special District Judge.

The opinion states the case.

*Leigh Burleson* and *John C. Townes,* for appellant.—1.    Under the laws of this State regulating the effect of naked possession of land for ten years, as they existed from 1856 to time of the adoption of the Revised Statutes of 1879, such possession for such time, if open, notorious, adverse, and uninterrupted, gave title to the occupant to 640 acres of land, although the actual occupancy were less in extent.

2.    When such holding is under no written designation of boundaries, the exact locality of the 640 acres to which the statutory title applies is to be determined by the intent and purpose of the party in possession, as evidenced by his contemporaneous conduct, and the designation so made by him is conclusive against him if he desired to

change the locality, and in his favor in suit brought against him for any portion of said 640 acres.

3. Where a party is in possession of 640 acres of land and marks the boundaries to which he claims and sells the land with reference to such boundaries, and the purchaser accepts same as correct and re-marks them on the ground and goes into possession of the land inclosed thereby, and at all times claims to these boundaries, and occupies for ten years, under the law as it existed from 1841 to 1879 the 640 acres to which the statute of limitations of ten years would apply would be fixed by such marked boundaries, and such possession would give title to the land included therein.   Pasch. Dig., arts. 24, 46; Charle v. Saffold, 13 Texas, 111; Smith v. Garza, 15 Texas, 153–158; Moody v. Holcomb, 26 Texas, 714; Melton v. Turner, 38 Texas, 81; Wood v. Drouthett, 44 Texas, 369; Mooring v. Campbell, 47 Texas, 37; Pearson v. Boyd, 62 Texas, 541; Craig v. Cartwright, 65 Texas, 413.

*F. G. Morris* and *David H. Hewlett,* for appellee.—1. The ten years statute of limitations, as it was from 1856 to the time of the adoption of the Revised Statutes, did not vest the squatter with title to 640 acres of land unless for such time he shall have had peaceable and adverse possession of some part of the tract or tracts of land from which his domain was to be carved.   To set the statute in motion requires that there must be a possession—actual, visible, notorious, distinct, and hostile.

2. The surveys 74 and 75 being separate and distinct tracts, things, or entities, one being no part or parcel of the other, either in fact or in law, the actual, visible, notorious, distinct, and hostile possession by appellant of 75 did not draw to it the constructive possession of survey No. 74.   It in nowise operated as a disseizin of the possession of the true owner of 74.

3. The marking of the lines partly around 74 was not equivalent to holding that survey under written muniments of title, and did not have the effect of drawing the constructive possession of that survey to that of the actual possession of another and different survey—75.

4. That surveys 75 and 74 were made by virtue of the same certificate does not in fact or in law change the effect or application of the foregoing propositions.   They were severed both by location and patent.   Pasch. Dig., art. 4624; Sanders v. Duval, 39 Texas, 182; Whitehead v. Foley, 28 Texas, 268; 26 Texas, 34; 38 Texas, 39; Sellman v. Hardin, 58 Texas, 86; Craig v. Cartwright, 65 Texas, 413; Parker v. Baines, 65 Texas, 605.

HOBBY, PRESIDING JUDGE, *Section A.*—This suit was instituted on August 6, 1883, by G. C. Gunther, the appellee, against J. N. Montgomery to recover the tract of land, 320 acres, described in the petition.

There is but one question in the case, and that is whether under the proof the defendant is entitled to the land sued for under the statute of limitation of ten years. The question has its origin in the following facts found by the court:

"The land was located under one certificate of 640 acres, but was patented to the heirs of Jacob Gunther January 4, 1858, in separate tracts of 320 acres each, one numbered 74 and the other 75. The date of the location does not appear. The heirs of Gunther, the plaintiff, and Mrs. Speicher in 1866 made a parol partition of the land, which was subsequently ratified in writing, the tract No. 74 being allotted to plaintiff.

"In the latter part of February, 1856, defendant J. N. Montgomery took actual and adverse possession of a portion of the southern end of survey No. 75, which adjoins the land in controversy upon the east, and of a portion of the northern end of survey No. 357, which is immediately south of survey 75. Defendant's occupancy of survey 357 originated in a mistake as to the location of the northern boundary line of said survey. It was his intention to go into possession of survey 75, which was also made for the heirs of Jacob Gunther, and to claim the land in controversy together with said survey 75.

"Since February, 1856, said defendant has at all times claimed said surveys 74 and 75 adversely to all other persons.

"Since the year 1856 defendant has had continuous, peaceable, and adverse possession of a portion of said survey 75, cultivating, using, and enjoying the same, but a portion of his improvements, including among other things his dwelling house, have been at all times since said year situated upon said survey No. 357.

"Up to the year 1874 defendant had no improvements of any character upon the particular tract of land in controversy; but was claiming the same under his possession of a portion of survey 75 made for the same heirs.

"During the year 1874 defendant extended his pasture and built fences across the boundary line between surveys 75 and 74 so that they inclosed two and one-half acres of the land in controversy, and since that time has been, up to the institution of this suit, in peaceable and adverse possession of said two and one-half acres of land, claiming the entire tract.

"During the same year 1874 defendant erected a house and inclosed a small lot on the land in controversy. At first the house was occupied by a tenant under defendant; afterward it became vacant."

The following sketch will sufficiently indicate the situation of the land in controversy, No. 74, and the adjoining tracts, and the locality of the improvements of the defendant.

The following additional facts were found:

"Immediately before the defendant J. N. Montgomery took possession of a portion of the southern end of survey No. 75 and a portion of the northern end of survey No. 357, as shown in the original findings of fact, said defendant bought out the claim of one Garrison to 640 acres of land, covering the land in controversy and survey No. 75. The boundary lines of the Garrison claim were marked on the ground and extended around both surveys 74 and 75, but its southern boundary line was further south than the south boundary line of the said two surveys, 74 and 75.

"The Garrison claim was founded solely on priority of claim, given notoriety by marking the boundaries and cutting house logs and timber. There was no written transfer from Garrison to Montgomery. The said Montgomery immediately after his said purchase re-marked the boundary lines of said claim, including therein the land in controversy."

The foregoing finding was made at defendant's request.

The value of appellant's improvements erected in 1874 was estimated at $115. Those erected in 1882, $50.

The court found also that "at the time of the institution of this suit defendant had not been in peaceable and adverse possession of any portion of the tract of land in controversy, cultivating, using, or enjoying the same for the period of ten years, and was not holding under deed or deeds recorded or not recorded, and had neither title nor color of title to the land in controversy."

And the court finds the law to be:

"That the plaintiff has a good fee simple title to the land in controversy.

"That plaintiff's right of action is not barred by either the three, five, or ten years statute of limitation.

"That defendant is not entitled to recover as for improvements made in good faith, and that plaintiff was entitled to recover."

Judgment accordingly. This is appealed from by the defendant.

The assignment of error is that "the court having found that the defendant Montgomery took possession under his purchase from Garrison and marked his boundaries in February, 1856, showing an adverse claim and holding of the 640 acres included in said marked boundaries, and having further found that at the time of occupancy the 640 acres tract was owned by the heirs of Gunther, and was in one square section divided by an imaginary line through the same, it should have found also that defendant's plea of ten years limitation matured prior to 1879."

Whatever right might have been acquired by J. N. Montgomery, the appellant, by reason of his possession in 1856 of the land, if it had been then titled and in a recognized and definite tract or body of 640 acres,

we do not consider such possession prior to the 4th of January, 1858, in this case as affording the basis for any right founded on his claim of ten years limitation.   No limitation could have been available to him until the equitable title by location, or the legal title by reason of the patent, had passed out of the State and became vested in Gunther or his heirs.   Nor is the fact important that he marked the boundaries prior to that date.   Kimbro v. Hamilton, 28 Texas, 565; Whitehead v. Foley, 28 Texas, 260.   It results from this that the only possession of appellant which could be invoked by him in support of his plea commenced on January 4, 1858, and it was confined to the tract of land which on that day was first created and given shape and form by the grant from the State.   This was the 320 acres survey, known as No. 75. When this tract was defined by metes and bounds in the patent, and its shape and size authoritatively ascertained by the patent, it then for the first time was subject to the operation of the law of limitation as between individuals, and it could only be affected thereby to the extent of the grant thus designated.   No right could have been acquired to an adjoining tract by reason of the possession of a part of No. 75, although it may have been simultaneously granted, and to the same person.   The owner of No. 74 was not put upon notice of any invasion of his right, or that his title to any portion of that tract was imperiled by the possession of No. 75, because that possession could not extend constructively to No. 74.

The right acquired under the statute of limitations by possession is upon the theory that there is an acquiescence in the adverse occupancy on the part of the owner, and this can only be predicated on the assumption that he has notice of it.   He could have no knowledge whatever of an adverse, distinct claim to one section of land by the actual possession of another.   Angell on Lim., sec. 392.

It is argued in this case that the location was under one certificate for 640 acres, and the title was in the same person to the land located. If this supports the claim that the possession of part of No. 75 can be extended by construction to No. 74, the same result would ensue if the 320 acres tract No. 74 was situated in another portion of the county.

The first act of appellant showing an actual adverse possession of No. 74 was, as found by the court, in 1874, when his pasture fence situated on No. 75 was so extended as to embrace and carve out of the former tract about two and a half acres of land, and the erection of a house on No. 74 the same year, which seems to have been occupied at one time by a tenant.   The suit having been instituted in August, 1883, there was not the requisite possession of ten years, under the statute, to entitle him to any part of No. 74.

According to the view we take of the case he had no constructive possession of the 320 acres tract No. 74 arising from the actual occu-

pancy of No. 75, and none for ten years of the two and a half acres on tract No. 74 involved in this suit which entitled him to recover; therefore we think there is no error in the judgment, and that it should be affirmed.

*Affirmed.*

Adopted June 9, 1891.