TARLTON, JORDAN & TARLTON v. W. A. KIRKPATRICK ET AL.

No. 6.

1. **Limitation.**—As against title under a certificate, limitation does not begin to run until the date of the location of the certificate.

2. **Same—Five and Ten Years Statute—Break in Possession.**— Where the unimproved part of a tract of land is severed by sale from the improvements, ordinarily the statute ceases to run as to the part that is unimproved. Where land is in the actual possession of the owner, a reasonable time under all the circumstances will be allowed upon its sale for the purchaser to take possession, before a break in the running of the statute will be declared.

3. **Five Years Statute—Payment of Taxes.**—Where one pleading the five years statute seeks to account for his failure to pay taxes for two years by showing that another under whom he claims did pay the taxes for those years. he must show that such other person was then in actual possession, claiming under deed duly registered. else he can not tack his own possession to the title acquired from such other person.

4. **Limitation—Possession.**—Enclosure and cultivation of a small part of a tract of land under a lease of the whole tract, *held*, under the facts, to constitute actual possession of the entire tract.

5. **Deed—Description of Land.**—The description in the deed was as follows: " Two hundred acres of land in Hill County, Texas, lying about six miles northeast from Hillsboro, and located by virtue of part of M. E. Atkinson 320 acres certificate.'' *Held*, a sufficient description under the five years statute; the 200 acres being the whole of the survey at that place.

6. **Trespass to Try Title — Outstanding Equity.**—An outstanding equity with which the defendant does not connect himself will not avail as a defense against the legal title asserted by plaintiff.

7. **Patent, Not Void when.**—If the second set of field notes constituted a relocation, then the certificate was barred; otherwise, not. The Commissioner in issuing the patent decided the second field notes to be merely a correction of the original survey which was made in time. Even if this was error, it would not make the patent void and subject to collateral attack.

APPEAL from Johnson. Tried below before Hon. J. M. HALL.

The opinion states the case.

*V. H. & Thos. Ivy*, for appellants.— 1. The court erred in deciding that G. Y. Tarver had had and held peaceable and adverse possession of the land by his tenant for more than ten years next before the filing of the suit. The relation of landlord and tenant was broken when Tarver conveyed to McKinnon & Call. Chandler v. Rushing, 38 Texas, 591.

2. J. P. Allen lived on his own pre-emption, his fence overlapping seven or eight acres on the land in suit. This overlapping did not constitute actual possession beyond such enclosure. Bracken v. Jones, 63 Texas, 184.

3. Defendants did not show an exclusive adverse possession for five years under Booth's deed to Tarver, A. M. Allen having pre-empted and adversely claimed and possessed part of the land for about three years of the time. Richards v. Smith, 67 Texas, 610; Chandler v. Rushing, 38 Texas, 591.

4. The description of the land in the deed from Booth to Tarver was not sufficient to support the pleas of limitation. Brokel v. McKechnie, 69 Texas, 32; Murphy v. Welder, 58 Texas, 235.

5. Plaintiffs were entitled to judgment against A. M. Allen, he having pleaded the general issue and failed to show any character of title.

*McKinnon & Carlton*, for appellees.— 1. The finding of the court that defendants and their vendors had held peaceable and adverse possession for more than ten years previous to the filing of the suit was correct. Craig v. Cartwright, 65 Texas, 421; Brownson v. Scanlan, 59 Texas, 226; Mooring v. Campbell, 47 Texas, 40.

2. Appellees had fully brought themselves within the requirements of the statute of five years limitation. Brownson v. Scanlan, 59 Texas, 226; Howard v. Kellum, 8 S. W. Rep., 93; Peyton v. Barton, 53 Texas, 302.

3. The Shackelford patent, under which plaintiffs claimed, was void. The certificate was first surveyed January 26, 1874, and the corrected field notes were not made until August 29, 1887. These last field notes were not, in fact, a correction of the first, but were new and different field notes, and at their date the certificate was barred by constitutional limitation. Rev. Stats., art. 3881; Const., art. 14, sec. 2.

HEAD, Associate Justice.— On January 26, 1874, duplicate certificate No. $\frac{14}{76}$, issued to the heirs of Samuel Shackelford, was located in Hill County, and a survey embracing 682 acres, including the land in controversy, was made thereon, and the field notes returned to the General Land Office. In August, 1887, these field notes were corrected so as to leave out all of the 682 acres except the 178 acres in controversy in this suit, and upon these corrected field notes patent was issued dated the 5th day of October, 1887. Appellants, claiming under this location and patent, filed this suit in trespass to try title against appellees in the District Court of Hill County, September 27, 1888. Appellees each pleaded not guilty and the statutes of limitation of five and ten years, but neither of them described in their pleading the particular part of the land they claim. It seems, however, from the evidence that appellee Kirkpatrick only claims 112 acres described in deed from McKinnon & Call to him,

dated April 21, 1883, and recorded same day, and the appellee Huff claims 27.6 acres described in deed from McKinnon & Call to him, dated April 21, 1883, and recorded same day, and 19.8 acres described in deed from G. Y. Tarver to him, dated July 24, 1882, and recorded same day.

Appellee Allen does not seem to have claimed any part of the land upon the trial. McKinnon & Call claimed the land conveyed by them to Kirkpatrick and Huff as aforesaid under a deed from G. Y. Tarver to them, dated April 18, 1883, and recorded same day. This deed is for 139.8 acres, described as part of the M. B. Atkinson 200 acres survey, giving the field notes. There was also in evidence a deed from G. Y. Tarver to J. P. Allen, dated February 4, 1884, recorded March 19, 1884, for 25.8 acres. G. Y. Tarver claimed the land conveyed by him to Huff, McKinnon & Call, and Allen as aforesaid under a deed made by W. L. Booth, as administrator of J. R. Grover, deceased, dated March 16, 1875, and recorded July 17, 1879. In this deed the land is described as "200 acres of land in Hill County, Texas, lying about 6 miles northeast from Hillsboro, and located by virtue of part of M. B. Atkinson 320-acre certificate."

There is nothing in the record to show how the estate of Grover acquired any interest in this land, and this deed was introduced only to sustain the pleas of limitation. The record, however, shows that two certificates were issued; one to Milton B. Atkinson by Barnard E. Bee, Secretary of War, No. 1101, for 320 acres, which was duly approved by the Commissioner of Claims and located in Ellis County; and one to M. B. Atkinson, by James S. Gillett, Adjutant General, No. 1027, for 320 acres, which was never approved by the Commissioner of Claims, but was attempted to be located in Hill County in 1871, in two surveys of 200 acres and 120 acres respectively, and the field notes of said surveys were returned to the General Land Office during said year. Said 200 acres survey embraced the land in controversy. The Commissioner of the General Land Office held this certificate and location invalid and refused patent thereon, and subsequently issued patent upon the Shackelford location as aforesaid, although later in date.

At the time Tarver purchased from Grover's administrator (which was in October, 1874, although the deed was not made until 1875), one J. P. Allen had from 7 to 8 acres of the land in controversy enclosed with his own land adjoining it, and a short time after said purchase said Allen became the tenant of Tarver. As to this tenancy, Tarver testifies he had a written contract with Allen by which the latter was to keep the land for five years, and to protect the timber and grass, and further on he says Allen had possession of the land as his tenant until he sold it. Allen says he does not remember when he rented the land from Tarver; that he lived there before and has lived there ever since; that nothing was said as to how long he was to keep it; that he occupied the land all the time for Tarver until he purchased from him; that he was to keep it until he was

dismissed as tenant, which had never been done.   Nothing is said in the evidence as to whether or not Allen was regarded by the parties as the tenant of McKinnon & Call or of Kirkpatrick during the interval between their purchase and the time they took possession thereunder.   All of the improvements upon the land with which Tarver was connected were upon the 25.8 acres conveyed by him to Allen in 1884.   Tarver paid all taxes on the land while he claimed it, but neither Kirkpatrick nor Huff paid taxes for the year 1885 or 1886.   In 1884 A. M. Allen, one of the appellees, undertook to pre-empt 160 acres on the north side of the land, and during the years 1885 and 1886 he paid the tax thereon; and verbal evidence was admitted by the court over the objection of appellants that about the time of the institution of this suit he, joined by his wife, had made deeds to Kirkpatrick and Huff for the portion of this 160 acres claimed by them respectively.

McKinnon & Call do not seem to have ever had possession of the land while they claimed it, unless Allen be held to have been their tenant. Huff seems to have taken possession immediately upon his purchases. Kirkpatrick is shown to have taken possession sometime during the year 1883, but no idea is given as to the length of time that elapsed after his purchase nor the circumstances attending the delay.

The case was submitted to the court without a jury, and judgment was rendered in favor of appellees upon the following special findings, to-wit:

"1. That the plaintiffs have by the patent, deeds, etc., in evidence the legal title to the land described in the petition.

"2. That G. Y. Tarver had had and held peaceable and adverse possession of said land by his tenant, using and enjoying the same, for a period of more than ten years next before the filing of this suit.

"3. That the defendants and those under whom they claim have had peaceable and adverse possession of the land in dispute, cultivating and using the same and paying taxes thereon, for a period of more than five years next before the filing of this suit.

"That under the facts as here found the court finds as a matter of law that the defendants are entitled to recover under the statutes of five and ten years limitations."

And from this judgment appellants have prosecuted this appeal, and have brought the whole case here for revision upon a statement of facts as well as upon such special findings.

It will be seen from the foregoing conclusions of fact that the finding of the court below to the effect that G. Y. Tarver held possession of the land for ten years can not be supported by the evidence.   The date of Tarver's deed was in 1875, although the order of confirmation was in October, 1874.   The sale of 19.8 acres to Huff was in July, 1882, and the sale of the 139.8 acres to McKinnon & Call was in April, 1883.   The sale

of the 25.8 acres to J. P. Allen in February, 1884, is not in controversy, he not being a party to this suit. It will thus be seen that less than nine years had elapsed from the date of the confirmation of the sale to Tarver by the Probate Court until he had parted with all title to the land in controversy. It is true there appears in the statement of facts some general statements to the effect that Tarver purchased sometime in 1873 or 1874, and took possession by his tenant some four or five months thereafter, but we do not regard this as entitled to any consideration in fixing these dates, when they are definitely shown by the record. But even if it had been shown that Tarver had possession years before 1874, it could not avail in this case. It will be noticed that the location upon which the patent was issued under which appellants claim was not made until January 26, 1874, and that limitation would not run against such title until this date is well settled in this State. Wood v. Welder, 42 Texas, 410; Kimbro v. Hamilton, 28 Texas, 565. The finding of fact made by the court below as to the five years statute is also defective, in that it does not show that appellees were claiming under deeds duly registered, and it will therefore be necessary for us to investigate as to the rights of the parties as disclosed by the statement of facts.

The finding of the court that Tarver held possession for ten years we think can fairly be construed as a finding that Allen, from sometime in 1874 until Tarver sold the land, was the tenant of the latter, and that his possession was of such notoriety as to fulfill the requirements of the statute of limitations if continued for the requisite time; but we have already seen that Tarver did not hold for ten years after the location appellees seek to prescribe against before he sold; and to complete the bar it will be necessary to supplement his possession with that of his vendees, if the facts will authorize this to be done. As to the 19.8 acres conveyed by Tarver to Huff July 24, 1882, we think the record sufficiently shows that there was no such break in the possession as would stop the running of the statute, and that as to this part of the land the bar is complete, and the judgment to that extent should be affirmed; but as to the remainder of the land there is more difficulty. When Tarver sold to McKinnon & Call it does not appear from the record either that they took actual possession themselves or that Allen was to continue to hold it for them as their tenant. The land so conveyed seems to have included none of the improvements claimed by either Tarver or Allen. If Allen had been in actual possession of the part of the land conveyed to McKinnon & Call, and had continued such possession during the three or four days they kept the land, we would have no difficulty in holding that during this time he would be considered their tenant, and his possession their possession, so as to prevent any break in the running of the statute. Brownson v. Scanlan, 59 Texas, 227; Heflin v. Burns, 70 Texas, 353. But this does not seem to have been the nature of Allen's possession. He seems

only to have been looking after this part of the land for Tarver while he owned it, in consideration of the use of a small part of the tract in his own enclosure, and when Tarver's title ceased he does not seem to have considered that he had anything further to do with it. When the unimproved part of a tract of land is severed by sale from the improvements, ordinarily the statute ceases to run as to the part that is unimproved. Cunningham v. Frandtzen, 26 Texas, 38.

In this case the record does not show that McKinnon & Call ever expected to take actual possession of the land, so as to raise the question whether or not they would be allowed a reasonable time in which to do this; nor does it appear that they were in any way acting for Kirkpatrick and Huff in making the purchase from Tarver, so as to connect their possession direct with his, as seems to have been done in the case of Heflin v. Burns, 70 Texas, 353, cited above. So far as we can see from the record, there was a complete break in the possession at McKinnon & Call as to the land conveyed to them by Tarver, which includes the 112 acres claimed by Kirkpatrick and the 27.6 acres tract claimed by Huff in this suit. It also seems that Kirkpatrick took possession of the 112 acres claimed by him in 1883, but how long in said year after he purchased from McKinnon & Call does not appear. Where land is in the actual possession of the owner, a reasonable time under all the circumstances will be allowed upon its sale for the purchaser to take possession before a break in the running of the statute will be declared. Whitehead v. Foley, 28 Texas, 15. But in this case there is not sufficient in the record to enable us to say that the length of time taken by Kirkpatrick was reasonable, even though there had been no break at McKinnon & Call. We are neither informed as to the length of time taken by him, nor as to the circumstances under which it was taken.

What we have said as to the break in possession at McKinnon & Call applies also to the claims of Kirkpatrick and Huff under the five years statute. Tarver's deed was not recorded until July 17, 1879, and therefore five years had not elapsed before his conveyance to McKinnon & Call, April 18, 1883, when the break occurred. Kirkpatrick and Huff each took possession under recorded deeds in 1883, and have remained in possession since that time; so that more than five years may have elapsed after the beginning of such possession before the institution of this suit. But neither of them paid taxes on the land for the years 1885 and 1886. To remedy this they seek to show that they have acquired the title of A. M. Allen, who did pay for those years. The answer to this is:

1. When Allen paid these taxes he neither had possession nor claimed the land under a registered deed.

2. The evidence showed that the conveyance from Allen and wife to Kirkpatrick and Huff were both in writing; and if this evidence was offered to show that title had passed by the conveyance, the deeds should

have been produced, and appellants' objection on account of their nonproduction should have been sustained.

3. To enable Kirkpatrick and Huff to tack their possession under the McKinnon & Call title to the title acquired from Allen it would be necessary for them to show that the Allen title was also registered. In other words, possession, payment of taxes, and registered deed must all concur to make the statute available. As said in Whitehead v. Foley, 28 Texas, 289: "A party who claims to have acquired a title to the land of another, with no other evidence of right than a possession of five years under a deed recorded, ought to show a compliance with the terms prescribed by the statute perfect in every particular."

Appellants also contend that the possession of J. P. Allen by reason of his having 7 to 8 acres of the land in his own enclosure was not sufficient to make the statute apply to the remainder of the tract, and cite Bracken v. Jones, 63 Texas, as authority. In that case the one whose fence was over the line did not profess to hold for the one who claimed the remainder of the tract; while in this there was an express tenancy, with the understanding that the possession of the tenant should extend to the whole tract, and, as we said above, we think the finding of the court upon this point sustained by the evidence. Brownson v. Scanlan, 59 Texas, 226.

Appellants also contend that the description of the land in the deed from the administrator of Grover to Tarver is not sufficient under the five years statute. The description in this deed is as follows. "Two hundred acres of land in Hill County, Texas, lying about six miles northeast from Hillsboro, and located by virtue of part of M. B. Atkinson 320 acres certificate." By the other evidence in the record it is made plain that this comprised the whole of the survey at that place, and the deed did not refer to 200 acres to be taken out of a larger tract. In Flanagan v. Boggess, 46 Texas, 335, the following description in a tax deed was held sufficient as a basis for prescription under the five years statute, to-wit: "Six hundred and twenty acres of the headright of David Brown, situate about twelve miles north of Henderson, in the neighborhood of Bellview." We think the reasoning of the court in holding this description good in that case has peculiar application to this, and we therefore hold the deed sufficient.

Appellees have also filed cross-assignments calling in question the sufficiency of appellants' title to entitle them to judgment, even though the defense of limitation should fail.

Their first contention is, that the evidence shows the location of the Atkinson certificate to be older than the Shackelford, upon which appellants' patent was issued, and that the Commissioner of the General Land Office was in error in holding that certificate and location invalid. It will be noticed that appellees in no way connect themselves with the At-

kinson location, and only seek to avail themselves of it as an outstanding title.

It has long been settled in this State that an outstanding equity will not avail a stranger thereto in defense against the legal title. Shields v. Hunt, 45 Texas, 424; Gullett v. O'Connor, 54 Texas, 416. The last case cited is peculiarly in point and conclusive in holding that even though it be conceded that the Atkinson location was valid and prior in time to the Shackelford, it would not avail appellees in defense against the legal title evidenced by the patent issued upon the latter.

The second contention of appellees in their attack upon the title of appellants is, that the corrected field notes on the Shackelford location returned to the Land Office in 1887 was not a correction, but a relocation, and was therefore upon a certificate barred by the Constitution. All of the land embraced in the last field notes was included in the survey made in 1874, and we are of opinion that they were properly treated as corrections and not as relocations. Railway v. Thompson, 65 Texas, 190. At any rate it was necessary for the Commissioner to decide as to whether this was a legitimate correction before he issued the patent thereon; and even if it be conceded that he made an erroneous ruling as to this, it would not make the patent void, but at most it would only be voidable when attacked by the proper parties, and it could not be taken advantage of by appellees, who are strangers to both locations. Gullett v. O'Connor, 54 Texas, 416; League v. Rogan, 59 Texas, 430; Decourt v. Sproul, 66 Texas, 368.

The appellee A. M. Allen having filed a plea of not guilty as to all of the land sued for, and not having offered any evidence of title, and the court having found that appellants had the legal paper title to all of the land sued for by them, judgment should have been rendered in their favor against said Allen, and it will be so rendered here.

Upon the whole case, we are of opinion that judgment should here be rendered affirming the judgment below in favor of appellee Z. T. Huff as to the 19.8 acres conveyed to him by G. Y. Tarver, July 24, 1882; that the judgment in favor of appellee A. M. Allen should be reversed and here rendered in favor of appellants against said Allen as to all the land sued for by them; that the judgment below in favor of appellee Kirkpatrick, and in favor of appellee Huff as to the 27.6 acres conveyed to him by McKinnon & Call, April 21, 1883, should be reversed and remanded for a new trial.

*Reversed and remanded.*

Delivered October 25, 1892.

Chief Justice TARLTON did not sit in this case.