HOUSTON OIL CO: OF TEXAS v. GORE.

(Court of Civil Appeals of Texas. Galveston. June ·21, 1913. Rehearing Denied Oct. 9, 1913.)

1. VENDOR AND PURCHASER (§ 209*)—RECONVEYANCE—EVIDENCE.

In trespass to try title, evidence held insufficient to show that A., to whom plaintiff made a verbal sale of the land in controversy in 1895, resold only a part of the land to plaintiff in 1904.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 425–427; Dec. Dig. § 209.*]

2. APPEAL AND ERROR (§ 695*)—RECORD—REVIEW—INSUFFICIENCY OF EVIDENCE.

Under an assignment of error that the court erred in holding that plaintiff was only entitled to recover a part of the land sued for, in that A., to whom plaintiff had sold the land in 1895, resold but a portion thereof to plaintiff in 1904, it was appellant's duty to set out at least the substance of all of the testimony on such issue; it being insufficient to set out only the testimony of A., ignoring that of plaintiff to the contrary.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2911–2914; Dec. Dig. § 695.*]

3. ADVERSE POSSÉSSION (§ 43*)—RIGHT TO POSSESSION — IMPROVEMENTS — SALE — TACKING—PRIVITY.

A verbal sale of the improvements and right of possession by one in possession of land under the ten-year statute of limitations, made before such possession and claim had matured into· title under the statute, is sufficient to constitute privity between the vendor and vendee, and enable the latter to tack his possession to that of his vendor.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 213–224; Dec. Dig. § 43.*]

4. FRAUDS, STATUTE OF (§ 71*)—INTEREST IN LAND—SALE—VALIDITY.

Where adverse possession and claim to land have matured into title under the ten-year statute of limitations, a verbal sale of the land is void under the statute of frauds, in the absence of circumstances taking it out of the operation of the statute.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 83, 113–139; Dec. Dig. § 71.*]

5. FRAUDS, STATUTE OF (§ 129*)—INTEREST IN LAND—SALE—PAYMENT OF PURCHASE MONEY—POSSESSION—IMPROVEMENTS.

Where one who has acquired title to land by adverse possession makes an oral sale thereof, payment of purchase money and taking possession by the vendee will not take the sale out of the bar of the statute of frauds, nor will the making of improvements have such effect, unless they are permanent and of some appreciable value bearing relation to the value of the land.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 311, 314, 318–320, 322, 325, 326; Dec. Dig. § 129.*]

6. FRAUDS, STATUTE OF (§ 71*)—INTEREST IN LAND—SALE—VALIDITY.

Plaintiff, having acquired title to land in controversy under the ten-year statute of limitations, verbally sold the land to A. in 1895, and he verbally resold it to plaintiff in 1904, under an agreement that he might remain in possession, keeping up the fences, and looking after the improvements, and would surrender possession on demand. He remained in possession thereunder till 1910. The only evidence of A.'s improvements was that while in possession he cleared and added about four acres to a field on a ridge. Held, that both the sale by plaintiff to A. and the resale were void under the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 83, 113–139; Dec. Dig. § 71.*]

7. TRESPASS TO TRY TITLE (§ 7*)—TITLE BY LIMITATION—EFFECT.

Plaintiff in trespass to try title, seeking to recover under a title by limitations, can only recover on the strength of his own title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 10; Dec. Dig. § 7.*]

8. ADVERSE POSSESSION (§ 7*)—LIMITATIONS—GOVERNMENT TITLE.

Since limitations do not run against the state, and all land titles emanate from the sovereignty, plaintiff claiming title by limitation must show that the sovereignty has parted either with the legal title by patent or grant, or its equitable title by location or survey.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 24–42; Dec. Dig. § 7.*]

9. ADVERSE POSSESSION (§ 114*) — TITLE — CONVEYANCE BY STATE—PROOF.

Where plaintiff in trespass to try title claimed under the ten-year statute of limitations, proof that the land was part of a league survey, and that the record title was in a certain private corporation, sufficiently showed that the state had parted with its title prior to the commencement of plaintiff's adverse possession in 1884, since no league grants could have been lawfully made since the adoption of the Constitution of 1876.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682, 683, 685, 686; Dec. Dig. § 114.*]

10. TRESPASS TO TRY TITLE (§ 47*)—PARTITION.

Where, in trespass to try title, it appeared that plaintiff was entitled to only a part of the land sued for by adverse possession, and that defendant was the record owner of the balance, the court was authorized to order a partition.

[Ed. Note.—For other cases, see Trespass to Try. Title, Cent. Dig. §§ 69–71; Dec. Dig. § 47.*]

11. TRESPASS TO TRY TITLE (§ 50*)—COSTS—APPORTIONMENT.

Rev. Civ. St. 1911, art. 6125, providing for the apportionment of costs in partition, does not apply to an action of trespass to try title, where plaintiff and defendant were each found to be owners of portions of the land, and partition was ordered.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 80, 81; Dec. Dig. § 50.*]

Appeal from District Court, Hardin County; L. B. Hightower, Judge.

Trespass to try title by W. J. Gore against the Houston Oil Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

Hightower, Orgain & Butler, and W. H. Davidson, all of Beaumont, and H. O. Head, of Sherman, for appellant. Singleton & Nall, of Kountze, for appellee.

REESE, J. This is an action in trespass to try title by W. J. Gore against the Hous-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

ton Oil Company of Texas to recover 160 acres of land out of the Rafferty league in Hardin county. Plaintiff claimed title under the ten-year statute of limitation. Defendant pleaded not guilty and title under the statute of limitation of three years. Upon the trial without a jury, the court rendered judgment for plaintiff for 145 acres, to be taken as nearly as practicable in a square form to include his improvements, and to be an equitable partition between plaintiff and defendant. Commissioners were appointed to survey, set apart, and designate the 145 acres in accordance with the judgment aforesaid. The commissioners made partition accordingly, and made their report to the court, which, so far as the record shows, was not objected to by either party. The report was approved by the court, and final decree entered, adjudging to plaintiff the tract of 145 acres so marked out and designated by the commissioners. Defendant filed a motion for a new trial, which was overruled, whereupon it prosecutes this appeal.

The following conclusions of fact of the trial court are approved and adopted as our conclusions of fact:

"(1) I find from the evidence in this case that the plaintiff, W. J. Gore, with his family, resided on the land in controversy in this suit in September, 1884, and immediately commenced to make improvements and clear and put in cultivation a farm thereon. That from September, 1884, to February, 1895, the plaintiff held peaceable and adverse possession of said land, cultivating, using, and enjoying the same, and claiming 160 acres thereof.

"(2) That when plaintiff first settled on the place he put in a small farm contiguous to his house, lots, cribs, and other improvements, which was increased in size at intervals during the next ten years. That some years after the first farm was opened, plaintiff cleared and fenced a 15-acre field, something like one-half mile from his other improvements, and across the creek therefrom, on what was known as 'Peach Tree Ridge.'

"(3) That in February, 1895, plaintiff made a verbal trade with one Mr. Ard, by the terms of which Ard took possession of said place, agreeing to hold possession thereof, and turn over to plaintiff one-third of the corn raised thereon each year until the value of such corn should amount to $200, and that after such payment should be made plaintiff would deed to Ard the place, consisting of 160 acres. That said Ard went into possession under that agreement in February, 1895, and held possession of said place continuously, making a crop thereon each year until the end of the year 1910.

"(4) That some years after 1895, and approximately during the year 1904, and after Ard had delivered to plaintiff the amount of corn agreed to be delivered under said verbal contract, Ard and plaintiff made another verbal agreement, by the terms of which plaintiff was to pay Ard $100, and Ard agreed that plaintiff should have all of his right and title in and to said premises except the field across the creek known as the 'Peach Tree Ridge field.' It was further agreed between plaintiff and Ard that Ard should continue to hold possession of said premises, and have all the crops raised thereon, but was to keep up the fences and improvements and surrender possession to plaintiff whenever plaintiff made demand for same. That plaintiff then and there paid to Ard about $50, and during the summer or fall of 1910 paid the balance of the $100 agreed to be paid, and at the end of the year 1910 Ard surrendered possession to plaintiff, and plaintiff placed one Cunningham in possession as tenant, and that Cunningham lived on said place and made a crop thereon during the year 1911.

"(5) That while Ard was in possession he added about four acres to the Peach Tree Ridge field; but there was no testimony tending to show whether such improvement was made before or after he traded the place back to plaintiff Gore. That a crop was made on said place each year from 1885 to 1911, inclusive, by plaintiff and those holding in privity with him.

"(6) That on ———— day of ————, 1907, Ike Gore was living on the O. C. Nelson league, had a field of some 22 acres on the James Rafferty league near the south line thereof, and some three miles from the place claimed by plaintiff herein. That on the last above mentioned date the said Ike Gore signed an acknowledgment of tenancy to the Houston Oil Company of Texas for the whole Rafferty league, and said acknowledgment of tenancy was on the ———— day of ———— duly recorded in Hardin county, Tex. That said Ike Gore had been in possession of his said field on the Rafferty league, making a crop thereon each year for about 16 years before executing said contract with the Houston Oil Company of Texas, and that after executing said contract there was no change in the character of his possession. He continued to cultivate his 22-acre field, but did not exercise or attempt to exercise any control over any other part of said league.

"(7) I find in accordance with the agreement of counsel in this case that the legal title (except in so far as defeated by plaintiff's limitation) is now in defendant Houston Oil Company of Texas to the entire Rafferty league; but there is no testimony to show when they connected themselves or their title with the state or sovereignty."

[1, 2] By its first assignment of error appellant complains that the court erred in holding that plaintiff was entitled to 145 acres of the land sued for, and the judgment is contrary to the evidence in that the testimony shows that plaintiff sold the entire

160 acres to Neal Ard, who in turn sold back to him only the "House place" of about 20 or 25 acres. The second assignment of error presents substantially the same question. In support of these assignments, in its statement of the evidence, appellant sets out only the testimony of Neal Ard on this point, entirely ignoring the testimony of appellee Gore, which certainly the court was at liberty to accept, even if in conflict with that of Ard. This testimony is rather rambling, as is that of Ard; but the clear and unmistakable import of it is that appellee sold the entire 160 acres by verbal sale to Ard in 1895, who occupied it until 1904, and that in 1904 Ard sold it back to him, but appellee told him that he laid no claim to the little field on the "Peach Tree Ridge," and that Ard might keep that part. All of the 160 acres except that "inside field," as appellee called it, which embraced about 15 acres, Ard was to keep. This field was about half a mile from the main field and other improvements. Appellant seems to base this contention mainly upon the fact that Ard paid appellee $200 for the 160 acres, and when appellee bought it back he paid only $100, and from this he contends that he only got by this verbal sale one-half of the 160 acres. There is no support even in Ard's testimony for this contention that he only sold back to Gore one-half of the land, and this is clearly and positively denied by appellee. Under the rules it was incumbent upon appellant, under such an assignment as this, to set out at least the substance of all of the evidence on the point, and specially to set out in substance all of the evidence supporting the conclusion which is attacked as not supported by the evidence. There is no merit in the assignments, which are overruled.

[3] Under the third and fourth assignments of error appellant presents the contention that under the verbal sale to Ard of the 160 acres Ard paid the purchase money, went into possession, and made valuable improvements, and that, in equity, this took the verbal sale out of the statute of frauds, and was a valid conveyance of the land, and that as to the verbal sale and conveyance by Ard to appellee Gore there were no improvements made and no change in the possession, Ard continuing in possession until 1910, and this sale was void under the statute of frauds. A verbal sale of the improvements and right of possession by one in possession of land under the ten-year statute of limitation, made before such possession and claim has matured into a title under the statute, is sufficient to constitute privity between such vendor and vendee, and to enable him to tack his possession to that of his vendor. Johnson v. Simpson, 22 Tex. Civ. App. 290, 54 S. W. 308.

[4, 5] But after such possession and claim has matured into a title under the statute, a verbal sale of the land falls under the general rule, and is void under the statute of frauds,

unless circumstances exist which, under well-settled rules of equity, take it out of the operation of the statute. It seems to be well settled that in such case payment of the purchase money and taking possession alone will not suffice to relieve such sale from the bar of the statute of frauds. Ann Berta Lodge v. Leverton, 42 Tex. 18; Hibbert v. Aylott, 52 Tex. 530. Where the making of permanent and valuable improvements is relied upon, such improvements must bear some relation to the value of the property, and, if they are of very slight and insignificant value, they will not have this effect. Cobb v. Johnson, 101 Tex. 443, 108 S. W. 811; Lodge v. Leverton, supra; Eason v. Eason, 61 Tex. 227; Bradley v. Ousley, 74 Tex. 71, 11 S. W. 1052.

The burden of proof is upon one who relies upon such improvements to take such verbal sale out of the statute to show that such improvements were of such value, compared to the value of the land, as to answer the requirements of the law as stated in the decisions cited. In any case it must be shown that such improvements were permanent and of some appreciable value.

[6] There is in the present case no evidence whatever of the value of the improvements made by Ard under the verbal sale by appellee to him. The only evidence is that he cleared and added to the field on the ridge about four acres. Both of these sales were made after appellee's title had matured under the ten-year statute. It is true that appellee left Ard in possession when he bought back from him, and he so remained in possession until 1910; but it was upon a distinct agreement that Ard was to keep up the fences, and take care of the improvements, instead of paying rent, until appellee demanded possession. This constituted Ard a tenant of appellee, as much so as another person would have been if appellee had put Ard out and put such other person in under such agreement. The only difference between these two verbal sales, so far as the statute of frauds is concerned, then lies in the fact that Ard cleared the additional four acres, which, as we have shown under the authorities, had no effect; no value being shown.

Another thing is to be taken into account with regard to these alleged improvements made by Ard. Appellee sold to Ard in 1895, and Ard sold back to him the 145 acres (excluding the ridge field) in 1904, but remained in possession as tenant of appellee until about 1910. The evidence entirely fails to disclose when the alleged improvements were made by Ard. They might have been made after the sale by him to appellee in 1904, and as the improvements consisted in clearing and adding four acres to this ridge field, which was excepted out of the sale from Ard to appellee, clearly this would not operate to relieve the sale from appellee to

Ard in 1895 of the bar of the statute of frauds. If one of these sales was void under the statute of frauds they both were. Under the authorities cited by appellant they were both void, and left the title in appellee to the entire 160 acres. The evidence conclusively establishes that appellee's title to 160 acres was complete, as found by the court, in September, 1894, a year before the verbal sale to Ard. The third and fourth assignments of error and the propositions thereunder are overruled. What we have said also disposes of the fifth and sixth assignments of error, which are also overruled.

The seventh assignment of error presents the proposition that the evidence was not sufficient to support the judgment of the court sustaining appellee's claim of title under the ten-year statute of limitation, because it fails to show when the state parted with its title, and that, as the statute did not begin to run in favor of appellee so long as the state had not parted with either the legal or equitable title, appellee has failed to establish his title, and was not entitled to recover.

[7, 8] The plaintiff seeking to recover on his limitation title under the ten-year statute could only recover on the strength of his own title. It is settled law that as limitation does not run against the state, and as all land titles emanate from the sovereignty, limitation did not begin to run in appellee's favor until the sovereignty had parted with either the legal title by patent or grant, or the equitable title by location and survey. Kimbro v. Hamilton, 28 Tex. 560; Keys v. Mason, 44 Tex. 140; Montgomery v. Gunther, 81 Tex. 325, 16 S. W. 1073; Tarlton v. Kilpatrick, 1 Tex. Civ. App. 107, 21 S. W. 407. It follows that in order to entitle him to recover appellee was required to show ten years adverse possession in himself or those under whom he claimed title, after the state had parted either with the equitable or legal title.

[9] There was no direct evidence as to the date of the issuance of the patent or the location and survey of the Rafferty league; but it was agreed, as part of the evidence in the case, "that the record title of the land in controversy herein and of the James Rafferty league is in the defendant, the Houston Oil Company of Texas." Here we have two facts established; that the land in controversy was part of a league survey, and that this league had been located, surveyed, and patented or granted by the sovereignty, otherwise the record title could not be in the Houston Oil Company of Texas. There has been no authority for the grant of a league of land or the issuance of a certificate for a league of land by the state, nor could such grant have been made or certificate issued at least since the adoption of the Constitution of 1876. It is not necessary to the decision of the question involved to go back

further than this. The only league grants in fact ever authorized were the headrights given to heads of families by the colonization laws of 1825 (1 Sayles, Early Laws of Texas, art. 47; 1 Sayles, Real Estate Laws of Texas, c. 5) and by the Constitution of the Republic of 1836 (General Provisions, § 10). It was provided by section 2, art. 14, of the Constitution of 1876: "All unsatisfied genuine land certificates now in existence shall be surveyed and returned to the General Land Office within five years after the adoption of this Constitution (April 18, 1876) or be forever barred." The certificate for the Rafferty league could not legally have come into existence since the adoption of this Constitution, and could not legally have been located after April 18, 1881. It conclusively follows, from the fact that this was a league grant to a citizen, and that it had been located, surveyed, and patented, which was necessary in order that appellee should have the record title, that it was surveyed and the field notes returned to the General Land Office prior to April 18, 1881, that is, within five years after the adoption of the Constitution of 1876. The title was thus shown to have been out the state at least at the time appellee's possession began in 1884. We are inclined to think, but do not decide the point, as it is not necessary to a decision of the question presented by the assignment, that the court could take judicial notice of the contents of the published abstracts of land titles published by the comptroller as provided by the act of March 9, 1875 (General Laws 1875, c. 56, p. 71), from which it appears that the James Rafferty league in Hardin county (and the only James Rafferty league in that county) was patented August 18, 1835. It follows from what we have said that the seventh assignment must be overruled.

[10] The court was authorized to order partition of the land, as was done. No objection was made to the report of the commissioners of partition, nor is it shown in any way that they did not make a just and equitable partition of the land as they were ordered to do. Lumber Co. v. Kennedy, 103 Tex. 297, 126 S. W. 1110; Lumber Co. v. Stewart, 130 S. W. 199. There is no merit in the eighth and ninth assignments of error, which are overruled.

[11] The court adjudged all costs (which included costs of the partition) against appellant, to which it objects by the tenth assignment of error. We do not think that the provisions of article 6125, R. S. 1911, control the judgment for costs in this kind of a proceeding, and that the court committed no error. But if it were it was the duty of appellant to make the objection in the trial court. There was a motion for a new trial by appellant; but therein no objection was made to the judgment in the matter com-

plained of in this assignment, which is over-ruled.

We find no error requiring reversal, and the judgment is affirmed.

Affirmed.