## SNOW et al. v. LETCHER.

(Court of Civil Appeals of Texas. San Antonio. Feb. 12, 1913. Rehearing Denied March 12, 1913.)

1. ADVERSE POSSESSION (§ 114*)—EVIDENCE—SUFFICIENCY.

In an action to recover land, evidence *held* insufficient to sustain a plea of five years' limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682–690; Dec. Dig. § 114.*]

2. ADVERSE POSSESSION (§ 13*)—REQUISITES.

To sustain a plea of limitations in an action to recover land, defendant was bound to show adverse, continuous, and unbroken occupancy of the land for the required period.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65–76; Dec. Dig. § 13.*]

3. ADVERSE POSSESSION (§ 82*)—CONTINUITY OF POSSESSION—INTERRUPTION.

The continuity of possession of land relied on by defendant in an action to recover land under a plea of limitations was interrupted by failure, for more than a year after execution of deeds under which he claims, to record them.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 468–471; Dec. Dig. § 82.*]

4. ADVERSE POSSESSION (§ 101*)—SCOPE—POSSESSION.

Possession of one tract of land under a deed conveying several tracts extends to all.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 575–589; Dec. Dig. § 101.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Action by Dewitt B. Snow and others against J. G. Letcher. From the judgment, plaintiffs appeal. Reversed and remanded.

Gordon Bullitt, of San Antonio, and Jno. L. Little, of Kountze, for appellants. Leonard Brown and James W. Brown, both of San Antonio, for appellee.

·FLY, C. J. Appellants instituted this suit against appellee to recover one-half of five tracts of land, consisting of three 320-acre tracts, one 160-acre tract, and one 114-acre tract, aggregating 1,234 acres of land, all situated in Bandera county, all having been patented to D. G. Chaney except the 114 acres which was patented to Dewitt B. Snow, and to set aside an execution sale of said lands on the ground of fraud in 'the sale. Appellee disclaimed as to the 114-acre tract, and pleaded not guilty, and limitations of three, five, and ten years. There were two suits filed involving the same land, but they were consolidated, and were transferred by agreement from Bandera county to Bexar county. The cause was submitted to the jury on special issues at the instance and request of appellants; the only issue submitted being that of limitation of five years. Upon the answers of the jury that appellee had been in actual adverse and continuous occupancy of the land for a period of five years prior to the institution of the suit, and had paid the taxes thereon as they accrued, the court rendered judgment in favor of appellants for one-fourth of the land sued for, and in favor of appellee for the remaining three-fourths of the land.

[1] It is .the contention of appellants that the evidence fails to sustain the plea of five years' limitation, as found by the jury, and a short review of the testimony of W. R. Luke and Leonard Brown, the only witnesses who testified as to the possession of the land, becomes necessary. Luke testified that he has lived in San Antonio for the last six or seven years—that is, since 1905 or 1906—but before that time he had lived in Bandera county for 28 years, about one mile "from the outskirts of this land." He stated that, after Louis Polk acquired the land in 1878, "J. E. Callahan leased it and run sheep on it," but that "the land was open, and other stock ran over it the same as the rest of the country." Callahan and the witness used the land in the manner indicated for "four or five or six years." The witness stated: "The first improvements on that land were made about July, 1898. A four-wire fence just fenced up the spring." No one lived on the land, but Callahan and Newcomer had cattle on the land, and the former cut timber and burned charcoal on the land, and cut logs and built cribs on it. The next improvement was a little adobe house which was built in June or July, 1899, which was occu-

pied by a man named Hunt, who had leased the land from Nowcomer. Hunt also had a yard and little garden and a goat pen. The fence remained around the spring about a year. In June, 1901, Hunt fenced 480 acres of the land with a three barbed wire fence. Hunt left the land in 1902, and then witness used the pasture for "close to a year." Rothenflue moved on the land on June 28, 1903, and stayed there three or four months; but witness still used it until Mills moved there, perhaps in the early part of 1904. When Mills left, Letcher, appellee, moved on the place. The testimony tended to show that the fence around the 480 acres of land was down at times and was in a poor condition. On cross-examination witness admitted that he did not know when Mills left the land, nor when Letcher moved on the land, and that he knew nothing about the possession of the land since 1905. There is no testimony to show how long Letcher lived on the land. He did not testify as to his possession, nor did any other ·witness, and, if there was possession sufficient to perfect a title by limitation, it must have been prior to the removal of Mills from the land. Brown made only occasional visits to Bandera county, in 1904 or 1905, but could not have known anything about the continuous possession of the land.

[2] No one went in possession of the land until Hunt moved there in 1899. He fenced 480 acres in 1901, and left in August, 1902, and no one was then in possession of the land until Rothenflue moved on it on June 28, 1903, and he stayed only three months, and when he left no one lived on the place until some time in 1904. The gates were open and the fences down during most of the time that no one occupied the land, which was a space of six or eight months. The use of the land by Luke was not such open use as to show adverse possession, when it seemed that any one's stock could enter the inclosure. It was necessary for appellee to show an adverse continuous and unbroken occupancy of the land, and this was not done. Overand v. Menczer, 83 Tex. 122, 18 S. W. 301; Phillipson v. Flynn, 83 Tex. 580, 19 S. W. 136; Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265. The evidence is too unsatisfactory to form the basis for a title to land. It may be remarked, in this connection, that it is rather inconsistent for a man who has perfected a title by limitation to purchase the same land at a sale of it under an execution issued by virtue of a judgment against the very persons against whom he is claiming title by limitation. What right Luke had to use the land or to put others in possession of it does not appear from the record. It seems from his testimony that he lived near the land, and when no one else used the land he used it. He claimed to have the right to rent the place to Mills, but from whom he got such authority is not shown. He stated he leased

the land from Rothenflue, but for how long is not shown. The payment of taxes must be proved for the five years of possession, running concurrently therewith.

[3] Some of the deeds through which appellee claims were recorded more than a year after their execution. That was not a reasonable time, and interrupted the continuity of possession. Sorley v. Matlock, 79 Tex. 304, 15 S. W. 261; Cobb v. Robertson, 99 Tex. 138, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 609; McLavy v. Jones, 31 Tex. Civ. App. 354, 72 S. W. 407.

[4] The true title to all of the land being in the same persons, the possession of one of the tracts under a deed conveying all of them would cover all of the tracts. Allen v. Boggess, 94 Tex. 83, 58 S. W. 833.

If appellee perfected a title by limitation to any part of the land, we are unable to see why he did not perfect it to all of it. No explanation is attempted of the action of the court in rendering judgment in favor of appellants for one-fourth and in favor of appellee for the remaining three-fourths of the land.

The judgment is reversed, and the cause remanded.