HOUSTON OIL CO. OF TEXAS v. WILLIAM M. RICE INSTITUTE FOR THE ADVANCEMENT OF LITERATURE, SCIENCE, AND ART. (No. 161.)

(Court of Civil Appeals of Texas. Beaumont. March 22, 1917. Rehearing Denied April 18, 1917.)

1. STIPULATIONS ⟨Key⟩18(4)—CONCLUSIVENESS.

In trespass to try title, where plaintiff claimed under three and five years' limitation, and defendant agreed that in so far as their claims conflicted the plaintiff had paid the taxes, defendant could not on appeal contend that all the taxes were not paid on all of the land originally sued for, part of which was not in controversy.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. § 44.]

2. ADVERSE POSSESSION ⟨Key⟩73 — COLOR OF TITLE—JUNIOR PATENTS.

Junior patents on lands, where the issue of patents has not been expressly prohibited, are color of title to support the three years' statute of limitation, whether based on pre-emption or otherwise.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 435-442.]

3. PUBLIC LANDS ⟨Key⟩176(2)—JUNIOR PATENTS—PRESUMPTIONS.

Since the Pre-emption Acts of Jan. 22, 1845 (2 Gammell's Laws, p. 1073), and Feb. 7, 1853 (3 Gammell's Laws, p. 1317), vest in the land officers the judicial authority to determine the validity of patents and impliedly therefore to determine whether land has already been appropriated, where the officers issued a patent it

prima facie imported that no prior patent was issued.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 572-575.]

4. ADVERSE POSSESSION ⟨Key⟩101—EXTENT OF POSSESSION—SUBDIVISION.

Where an original survey was subdivided into two tracts, but both were subsequently by the same deed conveyed to the plaintiff in trespass to try title, his possession upon one of the tracts extended to and embraced the other to the extent of the original survey.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 575-589.]

5. NEW TRIAL ⟨Key⟩89—GROUNDS—SURPRISE—SUFFICIENCY OF SHOWING.

A party having been served with an abstract which showed a deed to the other party to one part of the land in controversy in trespass to try title could not rely thereon, where the correct and complete deed was recorded, and, when he did rely thereon, was not entitled to new trial on the ground of surprise when the correct deed was introduced.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 177-180.]

Appeal from District Court, Newton County; A. E. Davis, Judge.

Action by the William M. Rice Institute, for the Advancement of Literature, Science, and Art, against the Houston Oil Company of Texas and others. Judgment for plaintiff, and defendant Oil Company appeals. Affirmed.

H. O. Head, of Sherman, and Parker & Kennerly and J. J. Lee, all of Houston, for appellant. Wightman & Hancock, of Newton, and Baker, Botts, Parker & Garwood, of Houston, for appellee.

DAVIS, J. This is an action of trespass to try title, brought by appellee against appellant et. al. in the district court of Newton county, Tex., to recover all of the T. D. Porter 315-acre survey, situated in Newton county, Tex. Plaintiff and defendant Houston Oil Company of Texas dismissed out of said suit, without prejudice, certain defendants, not necessary to mention here, and the case went to trial with appellee as plaintiff, and appellant and the Texas Turpentine Company as defendants. Appellee set up in its petition, among other pleadings, the three and five years' statutes of limitation to the Porter survey, and brought the Texas Turpentine Company in as a defendant, because of a lease contract it had with the defendant Houston Oil Company of Texas, involving the land in controversy, and sued to recover damages, because of injury to pine timber and the value of certain resin taken from the timber. The defendant Houston Oil Company of Texas, in its answer, alleged that it was the owner in fee of the James L. Howard 1,107-acre survey, a senior survey, and that the Porter survey sued for by plaintiff was a junior survey. It then disclaimed as to all of the Porter survey not in conflict with the Howard survey, and set up title to that portion of

the T. D. Porter survey in conflict with the Howard survey. The defendant Texas Turpentine Company answered, setting up its lease contract with the defendant Houston Oil Company of Texas, and by its pleas of general denial and not guilty. The case was tried before the court without a jury, and resulted in a judgment for plaintiff, from which the defendant Houston Oil Company of Texas, alone, has appealed.

Plaintiff in its petition pleaded the three and five years' statutes of limitation, as follows:

"Plaintiff further represents that it has had and held, peaceably, continuous and adverse possession under title and color of title from and under the state of Texas, said land and tenements above described, claiming, cultivating, using, and enjoying the same, for more than three years after defendants' cause of action accrued, if any cause of action the said defendants, or either of them, ever had, and before the commencement of this suit, and this it is ready to verify, and plaintiff specially pleads said title in support of its claim to the above-described land."

"Plaintiff further represents that it, claiming the land above described under deeds duly registered, has had peaceable, continuous, and adverse possession of said land and tenements above described, cultivating, using, and enjoying the same, and paying all taxes due thereon, for a period of more than five years after defendants' cause of action accrued, if any cause of action the said defendants, or either of them, ever had, and before the commencement of this suit, and this it is ready to verify, and plaintiff specially pleads said title in support of its claim to the above-described land."

It was agreed upon the trial of the case:

"That the Houston Oil Company of Texas, a defendant, prior to the said 8th day of May, 1907, acquired the title to the James L. Howard survey, and that it now has title thereto, except in so far as the plaintiff may have title to a part thereof, because and by virtue of the conflict with the junior T. D. Porter survey, and its claim of title thereunder by virtue of limitation; the only issue in this case being whether or not the Rice Institute has acquired title by virtue of adverse possession under the limitation law to so much of the T. D. Porter survey as conflicts with the James L. Howard, survey."

It was also agreed upon the trial of the case:

"That the taxes have been paid on the land in controversy by the plaintiff herein each and every year as the same became due from the year 1907, including the taxes for the year 1907, to and including the year 1915, and the taxes for 1915 were paid on January 20, 1916."

It is clear that the parties, by these agreements, expressly resolved the whole case into one issue, and that was whether or not the plaintiff had acquired title to that portion of the Porter survey in conflict with the James L. Howard survey under the three or five years' statutes of limitation by virtue of adverse possession.

The following facts were established upon the trial of the case: The James L. Howard survey was titled on October 15, 1835, and T. D. Porter was located by virtue of a preemption certificate issued in 1857, and the patent issued in 1859. That the north part of the Porter survey conflicts with the southern part of the Howard survey to the extent of 265 acres of land, leaving only 50 acres of the Porter survey not in conflict with the Howard survey. That on March 6, 1860, T. D. Porter sold and conveyed by deed to R. P. Hext, 160 acres, more or less, somewhat in the shape of a triangle off of the east portion of his survey, describing the same by metes and bounds. That on the 19th day of May, 1869, T. D. Porter sold and conveyed by deed to H. H. Ford 160 acres, more or less, in a rectangle off of the west portion of his survey, describing the same by metes and bounds, and by the two deeds conveyed the entire Porter survey.

Hereafter we will refer to the divisions of the Porter survey as the "Hext tract" and the "Ford tract."

The first call in the field notes of the Hext tract reads as follows, "Thence west 500 vrs. to 2nd corner," and which second corner of this tract is the second and southwest corner of the Porter survey, and the 500-vara line called for is one of the south boundary lines of the Porter survey. The second call reads: "Thence north 900 vrs. to Porter's creek, and 1,840 vrs. to a stake." This 1,840-vara line is the west line of the Porter survey, and the third corner called for is the northwest corner of the Porter survey. The third call reads: "Thence east 500 vrs." This line is a part of the northern boundary line of the Porter survey. The fourth call reads: "Thence S. 2,740 vrs. parallel with 2nd line to the place of beginning, containing 160 acres, more or less." Thus it will be seen that whoever prepared the deed understood the calls for the second line of "900 vrs. to Porter's creek, and 1,840 vrs. to a stake," to mean that this line was 900 varas plus 1,840 varas long, making 2,740 varas from the second corner to the third corner. This tract is a rectangle, and the call for the fourth line says, "parallel with 2nd line," and the call for its length, therefore, is immaterial. The calls describing both the Hext tract and the Ford tract exactly describe the Porter survey.

A. G. Wells acquired both tracts by separate deeds, and thereafter conveyed both tracts in the same deed to W. M. Rice, and the executors of the W. M. Rice estate conveyed to appellee. These two subdivisions of the Porter survey are contiguous.

It was also agreed upon the trial of the case:

"That the inclosures, buildings, improvements, etc." (under which appellee claimed both tracts by virtue of the three and five years' statutes of limitation) "are all on the Hext tract."

The evidence on the question of limitations satisfactorily shows that the appellee, through tenants for more than five years prior or to the institution of this suit, with inclosures, buildings, improvements, and cultivation on the conflicting portion of the Hext tract only had and held peaceable and adverse possession of the Hext tract, under a

deed duly registered, describing both the Hext tract and the Ford tract, and thereby describing the Porter survey as a whole; that the northern part of the Porter survey, composed of parts of the Hext tract and the Ford tract, were in conflict with the southern portion of the Howard survey. The appellant, Houston Oil Company of Texas, it was agreed upon the trial, during the time appellee claims to have perfected its limitation under the three and five years' statutes, was the owner of the James L. Howard survey.

Appellant's assignments of error may be summed up in seven contentions, as follows:

(1) That appellee, plaintiff below, did not plead payment of taxes on all of the land, and the evidence showed payment of taxes on only two-thirds of the land described in its recorded deed, and for this reason appellee could not recover under the five years' statute of limitation.

(2) That appellee claimed the land in controversy, by virtue of the T. D. Porter pre-emption claim to the land, it then being titled to appellant's predecessor in title, wherefore such pre-emption location and survey, and patent issued thereto, were void, being contrary and repugnant to the pre-emption laws of the state of Texas, which permitted pre-emptions of vacant public domain only; and therefore appellee could not recover under the three years' statute of limitation, for the reason that a void location, survey, and patent constitute neither title nor color of title.

(3) That the tract claimed by appellee having been subdivided, the statute of limitations cannot be invoked by appellee to a subdivision of which it had never been in possession.

(4) That it was admitted that appellee had not had any possession whatever of the Ford tract, and since the Porter survey had been divided into two tracts, and there being no possession of the Ford tract, it could not recover under its claims of limitation.

(5) That the burden was on the appellee to show that it paid taxes on all of the land described in the recorded deed under which it claimed title under the five years' statute; and proof that it paid taxes on 265 undivided acres of the 402 acres described in its deed is insufficient to vest in it title to any part of the land.

(6) That appellee failed to show occupancy of the land described in its petition for three or five years consecutively before the institution of this suit.

(7) That because of the surprise of the appellant on the trial of the case as to a material fact proven by appellee, which appellant did not know of or by the use of reasonable care and diligence could not have discovered, and because of newly discovered evidence by appellant after the trial, the lower court should have granted a new trial.

The appellee, basing its contentions upon its pleadings, the agreements of record between the parties, and the evidence in this case, opposes each and every contention urged by appellant.

[1] We will discuss the contentions of appellant in the order enumerated above. Appellant bases its first contention upon the proposition: That the field notes of the two tracts of land, comprising the Porter survey, contain 402 acres of land, as shown by the field notes. That the plaintiff shows to have only paid taxes on 265 acres, about two-thirds of the survey described, and cites numerous authorities in support of this contention, and which contention, but for errors and agreements, would be supported by these authorities, but this contention is not tenable for two reasons: (1) Because, as explained in the facts found by us, as set out above, the deed describes the Ford tract one way and appellant erroneously reads the description of this tract another way; (2) because the parties to this suit, upon the trial, agreed that for more than five years prior to the institution of this suit the appellee had paid all taxes on the land in controversy, and had disclaimed as to all the land sued for not in conflict with the Howard survey, and not in controversy. And they further agreed upon the trial that the sole issue was the question of limitation of three and five years.

There is an agreement of the payment of all the taxes on the land in controversy, and appellant now seeks to avoid that agreement by showing that all the taxes were not paid on all of the land originally sued for.

[2] Appellant's second contention is based upon the proposition that the Porter survey being a pre-emption survey, and a junior survey, having been partly laid on the Howard survey, a senior survey, that the patent to that portion of the Porter survey in conflict with the Howard survey was void, and would constitute neither title nor color of title, and cite authorities in support of this contention, the following: Article 14, § 2, Constitution of Texas 1876; Pre-emption Act January 22, 1845 (2 Gammell's Laws, p. 1073); Pre-emption Act Feb. 7, 1853 (3 Gammell's Laws, p. 1317); Pre-emption Act Feb. 13, 1854 (3 Gammell's Laws, p. 1550); Pre-emption Act Aug. 15, 1856 (4 Gammell's Laws, p. 457); Pre-emption Act Feb. 1858 (4 Gammell's Laws, p. 1024); Clark v. Smith, 59 Tex. 279; Gilbert v. Harris, 109 S. W. 392; Sutton v. Carabajal, 26 Tex. 497; Buford v. Bostick, 58 Tex. 70; Jennings v. De Cordova, 20 Tex. 514; Pohle v. Robertson, 102 Tex. 274, 115 S. W. 1167; Keith v. Guedry, 114 S. W. 397; Besson v. Richards, 58 S. W. 611; Kimmell v. Wheeler, 22 Tex. 77.

This is a question which has been litigated and passed upon time and again in this state; but, quoting with approval from appellee's able brief, we think that the facts in each case divide all of the Texas decisions into the three following classes:

(a) Where junior patents are issued subse-

quent to the Constitution of 1876 on certificates, (such patents) are held void and not sufficient to support the three years' statute ·of limitation; this because the Constitution is held to expressly prohibit the issuance of ·such patents.

(b) Where all claims are under awards of school lands or pre-emptions, and a patent has not been issued, such claims are held not color of title to support the three years' statute of limitation.

(c) All junior patents issued by the state of Texas on lands, where the issue of patents had not been expressly prohibited by law, have been held color of title to support the ·three years' statute of limitation, whether based on a pre-emption or otherwise.

The facts in the instant case bring it within class (c), and, while we do not find the decisions of the state uniform in support of proposition (a) above stated, yet they have been uniform throughout as to class (c); and, since this case is brought within this class, ·it will not be necessary to discuss either class (a) or class (b), but we will call attention to the fact that, since the adoption of the Constitution of 1876, our Supreme Court has held patents issued on lands already appropriated not to be void for all purposes. Gullett·v. ·O'Connor, 54 Tex. 408; Grigsby v. May, 84 Tex. 240, 19 S. W. 345.

[3] The Pre-emption Acts of January 22, 1845, and February 7, 1853, do not prohibit the officers of the state from issuing patents, upon lands previously patented, upon pre-emptions, but vests in the officers the judicial authority to determine all of the incidents necessary to be determined to the validity of the patent issued. The ·repealing clause contained in the Pre-emption Act of February 13, 1854, expressly exempted all rights previously acquired, and consequently the power given the officers to determine the facts was not abrogated. The law vesting in the officer this judicial character, his decision, that the land on which the patent was issued was properly subject to pre-emption, is valid and binding upon the state, until the same is set aside in a proper action before a proper tribunal. This condition arises by reason of the fact that the officers of the state are not prohibited by the act from issuing patents on pre-emptions on lands already appropriated, but the pre-emption right is merely given on unappropriated lands, which, in all cases, involves a decision by the officers as to the fact of previous appropriation before the issuance of the patent. The power and duty are with the commissioner of considering and deciding whether or not the land for which a patent is sought has been appropriated by a valid location prior to that of the applicant, and his jurisdiction to decide this question cannot depend upon the correctness of his decision. That would be as unreasonable as to hold that a court had jurisdiction only when it committed no error. Having, then, the power to decide, and the duty of deciding, his decision must be prima facie right, if the land lie in territory subject to location, and the patent will convey an indefeasible title, provided there be no prior valid location in the way. And, when the patent is issued, it vests the patentee with the legal title, and is prima facie evidence that it was within the power of the officer, and that every prerequisite had been performed.

It will be noted that the cases cited by appellant show that each of them is based upon facts covered by propositions (a) or (b), and most of which come under proposition (b). The following cases cited by appellant, of Sutton v. Carabajal, Clark v. Smith, Jennings v. De Cordova, Pohle v. Robertson, and Besson v. Richards, are cases in which no patent had been issued by the state, and are not in point with the instant case. The line is very carefully drawn in these decisions between those cases where the state had divested itself of every right by the issuance of a patent, and those cases in which no patent had been issued, and the party was attempting to hold under "pre-emption claim," or "location of certificates," or "awards of school land." We will not discuss the numerous cases cited by appellant, but a careful study of each case bearing upon this question will disclose that they are cases where the patents have issued since the adoption of the Constitution of 1876, or claims under awards of school lands, or pre-emptions, and patents have not been issued. We therefore hold that all junior patents issued by the state of Texas on lands, where the issuance of patents had not been expressly prohibited by law, are color of title, and will support the three years' statute of limitation, upon the ground that there being, on the date of the issuance of the patent to the Porter survey, no law expressly prohibiting the issuance of junior patents by the officers of the state of Texas, and the power of the officer existed to act in the issuance of a junior patent, his erroneous action in so acting would not be void, but at most would be only voidable; otherwise, any person may attack a patent for errors in the judgment of the officer empowered to issue it, and that which is intended to be among the highest evidence of title be open to question by any-one. League v. Rogan, 59 Tex. 430; Smith v. Power, 23 Tex. 30; Gullett v. O'Connor, 54 Tex. 416; Horton v. Halff, 147 S. W. 735; Grigsby v. May, 84 Tex. 240, 19 S. W. 345; Pohle v. Robertson, 102 Tex. 274, 115 S. W. 1167; Williamson v. Brown, 49 Tex. Civ. App. 402, 109 S. W. 412; Garrison v. Arnett, 58 Tex. Civ. App. 537, 126 S. W. 611; Williamson v. Miller-Vidor Lbr. Co., 178 S. W. 800.

[4] Appellant earnestly urges, under its third contention, that the tract claimed by appellee having been subdivided, the statute of limitation cannot be invoked by appellee

to a subdivision of which it had never been in possession. While this proposition, with proper facts to support it, may be sound, yet, under the facts in this case, they are not applicable. The two tracts into which the Porter survey had been divided were contiguous, and, after this survey had been divided into two tracts, both tracts thereafter were conveyed in the same deed to appellee, a description of both tracts gave a complete description to the whole Porter survey, and, as the record title to both of said tracts under the Howard patent was in appellant during the entire period of appellee's occupancy, the possession by appellee of one of said tracts under said deed extended to both of said tracts, constituting the land in controversy. Because the Porter survey had been divided into two tracts, and because in the conveyance to appellee the two tracts were conveyed by separate descriptions, would not prevent possession by appellee of one of the tracts, simply because it had its improvements on the other tract, for the reason that the description of both tracts described the entire survey, and the possession of one of the tracts under this deed would be possession of both tracts. We can see no difference in describing the whole by two descriptions, and describing the whole by describing its several parts into which it has been divided, which, taken together, describe the whole; and while appellant, under its fourth contention, claims that appellee agreed that it had no possession of the Ford tract, we find no such agreement in the record. We do find that appellee agreed that its buildings, inclosures, improvements, etc., were all on the Hext tract, but this is not tantamount to an agreement that appellee had no possession of the Ford tract, but is in harmony with appellee's contention that possession under its deed of one tract would be possession of both tracts. Allen v. Boggess, 94 Tex. 83, 58 S. W. 833; Snow v. Letcher, 154 S. W. 355.

As to appellant's fifth contention, we do not think, under the agreement of the parties of payment of taxes on all of the land in controversy, that it was necessary for appellee to prove payment of taxes on any of the land not in controversy, though described in its deed.

Appellant, by its sixth contention, urges that appellee failed to show occupancy of the land described in its petition for three or five years consecutively before the institution of this suit; this contention raises the question of the sufficiency of the testimony, and is a question which was decided against appellant by the trial court, and we think, as found by us above, that the testimony satisfactorily shows occupancy by appellee for five years.

[5] Appellant's seventh contention urges that because of surprise of appellant on the trial of the case, in this, that appellee's deed

under which it claimed conveyed not only the Ford tract, but the Hext tract also, which appellant did not know, and by the use of ordinary care and caution would not have discovered, for the reason there was an agreement to read from an abstract, and the abstract which it had, and which had been certified to by Mr. Hancock, one of the attorneys for appellee, as manager of an abstract company, showed by the abstract that the deed to appellee did not contain a description of, nor did it convey, the Hext tract, and, being misled by this, it did not look at the record of the recorded deed, but, when this deed was offered in evidence, objected for the reason that it did not convey the Hext tract, and, to its surprise, the record disclosed that the deed conveyed the Hext tract, as well as the Ford tract, and further that, since the trial of the case, there was newly discovered evidence, and for all of which the trial court should have granted a new trial.

It appears that this abstract was prepared by one of appellee's counsel long before he was employed as an attorney in this suit. The abstract does omit in appellee's deed the description of the Hext tract. The deed was of record in the courthouse where the case was tried, and appellee, some time before the trial of the case, placed in the hands of attorney for appellant its abstract, which showed that appellee's deed to the land contained not only a description of the Ford tract, but described and conveyed the Hext tract also. Appellant's attorney knew that appellee's attorneys were able and efficient lawyers, and it appears to us that the most reasonable conclusion he could have come to, under the circumstances, was that his abstract must be wrong, as appellee was suing for this identical tract of land. Appellant placed all of its hope of defeating this suit upon the failure of appellee's deed to convey the Hext tract, and thereby sought to defeat appellee's claim under the three and five years' statutes of limitation, because the improvements, inclosures, buildings, etc., of appellee, were all on the Hext tract, and for this reason it would not be necessary to show by any testimony that appellee had not occupied the land sued for for three or five years. It is plain that the negligence of appellant, which led to its failure to discover that the deed to appellee conveyed the Hext tract, was also the cause of its failure to find testimony that appellee had not occupied the land, as claimed by it. We do not think the trial court erred in refusing to grant a new trial.

We are therefore of the opinion that this case should be affirmed, and it is so ordered.

Affirmed.

Chief Justice L. B. HIGHTOWER, Jr., having been of counsel, is disqualified, and did not sit.