# JESSE MCKEE ET AL V. E. R. STEWART ET AL.

No. 7884. Decided May 13, 1942.
Rehearing overruled June 10, 1942.
(162 S. W., 2d Series, 948.)

*John H. Thomas,* of Dallas, *Slay & Simon,* of Fort Worth, and *E. E. Fisher,* of Houston, for plaintiffs in error, McKee and others.

The Court of Civil Appeals erred in holding that it was not necessary, in order to acquire title by limitation, that the evidence show cultivation, use or enjoyment of the land in controversy, or any part thereof. Baily v. Kirby Lbr. Co., 195 S. W. 221; Noland v. Weems, 141 S. W. 1031; Harmon v. Overton Refining Co., 130 Texas 365, 109 S. W. (2d) 457.

On the question of fencing and holding land with the consent of the owner being adverse possession. Hardy v. Bumpstead, 41 S. W. (2d) 226; West Production Co. v. Kahanek, 132 Texas 153, 121 S. W. (2d) 328.

*Ramey, Calhoun, Marsh & Sheehy,* of Tyler, *Lee & Porter,* of Longview, for defendants in error, Stewart and others.

Where grantor in conveying land includes a small strip which he has no further use for and there being nothing to indicate an intention of his part to reserve same, and in attempting to apply the description in the deed to the ground an ambiguity arises because of the inclusion of this small strip, it was error for the court to refuse to hold that the land involved passed in the conveyance. McAnally v. Texas Company, 124 Texas 196, 76 S. W. (2d) 997; Hartman v. Huntington, 32 S. W. 562; Paul v. Perez, 7 Texas 338; Bruce v. Washington, 80 Texas 368, 15 S. W. 1104; Brunham v. Hardy Oil Co., 108 Texas 555, 195 S. W. 1139.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

The suit is by defendants in error, Stewart et al, against plaintiffs in error McKee et al, for the title and possession of a small tract of land, 4.4 acres, in the James Jordan league in Smith County, and for the recovery of the value of oil produced from a well drilled on the land by plaintiffs in error. After trial before the court without a jury, judgment was rendered that defendants in error take nothing by their suit, and

elaborate findings of fact were made by the trial court. The Court of Civil Appeals reversed the trial court's judgment and remanded the cause. 150 S. W. (2d) 415.

W. C. and R. F. Wiley, in the year 1858, became the owners of a tract of 320 acres in the north part of the Jordan league, and in the year 1863, Mrs. Parmelia Turner acquired a tract of 280 acres in the same league lying immediately west of the Wiley tract. The common corner of the Wiley tract and the Parmelia Turner tract, the location of which is undisputed, is on the north line of the league and the line between the two tracts, according to the descriptions in the deeds, runs from that point south a distance of approximately 1,600 feet to a small creek known as Wiltshire creek, and thence down the creek with its meanders. Mrs. Parmelia Turner, joined by her husband, by deed dated March 1, 1883, conveyed to Louis Robinson a 35-acre tract out of the northeast corner of her 280-acre tract, and on October 3, 1883, the same grantor, joined by her husband, conveyed to Benjamin Roberson, a tract lying immediately south of the 35 acres and described in the deed as follows:

"BEGINNING at the Southeast corner of G. A. Turner land; THENCE North 80 rods to a corner; THENCE East 74 rods to a corner; THENCE South 80 rods to a corner; THENCE West 74 rods with the North boundary of Alfred Bells land and meandering of the same place to the place of beginning, containing thirty-seven acres."

The trial court made the following findings with reference to the 37-acre tract conveyed by Parmelia Turner and her husband to Benjamin Roberson and its relation to the 4.4 acres in controversy herein:

"This deed calls for exactly 37 acres, that is, it does not call for 'more or less,' and the calls calculate exactly 37 acres, indicating that the transaction must have been understood as a sale of exactly 37 acres. Instead of calling for the east line of the 37 acres to run south from its N. E. corner to the creek and thence with the meanderings of the creek, etc., as called for in the deed to Parmelia Turner of the 280 acres, it calls for a direct straight east line of 74 rods. This east line of the 37 acres strikes the creek about 30 rods from the N. E. corner of the 37 acres, and runs thence on south to the S. E. corner

of the 37 acres, leaving a parcel of 4-4/10 acres lying in the bend of the creek east of the east line of this 37 acres, which is a part of the 280 acres tract, and which was not included in the conveyance to Ben Roberson, and which was never conveyed by Parmelia Turner, nor by any one holding and conveying title to the 37 acres tract. This 4-4/10 acres is the land in controversy in this suit and belongs to the heirs of Parmelia Turner and their assigns unless title has been lost to them by limitation."

Thus the trial court found that the 4.4-acre area, the subject matter of this suit, lies immediately east of the tract that was conveyed by Parmelia Turner to Benjamin Roberson and not within the bounds of that tract.

The Court of Civil Appeals held, however, that it is an undisputed fact that the northeast corner of the Benjamin Roberson 37-acre tract is coincident with the southeast corner of the Louis Robinson tract, and further that the 4.4-acre tract in controversy awarded by the trial court's judgment to plaintiffs in error includes, according to the undisputed evidence, a strip of 79 feet off the east side of the 37-acre tract that was conveyed by Parmelia Turner to Benjamin Roberson.

Defendants in error claim title to the 4.4 acres for which they sue through deeds from and under Benjamin Roberson conveying the 37-acre tract and they also claim, through deeds from the heirs of Benjamin Roberson made in the year 1937, title which they assert Benjamin Roberson acquired by adverse possession of the 4.4 acres while he owned and resided upon the 37-acre tract. Plaintiffs in error claim title through deeds and oil leases from the heirs of Parmelia Turner.

It is our opinion, after careful examination of the statement of facts, that the findings of the trial court above quoted as to the location and boundaries of the area included in the deed to Benjamin Roberson are well supported by evidence, particularly by the testimony of the surveyor, Jo White, who was offered as a witness by defendants in error. This witness, who made several surveys on the ground, testified that a sketch prepared by him and offered in evidence by defendants in error correctly depicted the property as it is on the ground, including the various tracts shown on the sketch, among them being the Parmelia Turner tract, the tract conveyed by Parmelia

Turner to Benjamin Roberson, and the 4.4 acres in controversy. During the course of his testimony and for the purpose of showing clearly the lines and corners of the several tracts, the witness placed on the sketch numbers marking the lines and corners. According to the sketch as prepared and marked by this witness and explained by his testimony, the northeast corner of the 37-acre tract conveyed to Benjamin Roberson is not a common corner with the southeast corner of the Louis Robinson 35 acres but is 79 feet west of that corner, and the 4.4-acre tract in controversy lies outside of and immediately east of the 37-acre tract conveyed to Benjamin Roberson, having for its west line the east line of that tract.

Defendants in error make the further contention that the deed from Parmelia Turner to Benjamin Roberson should be so construed as to convey all of the land then owned by the grantor, that is, the land as far east as Wiltshire Creek. It is argued that if the deed is not given that construction there would be reserved to the grantor two isolated small strips of land in the bends of the creek and that, under the rule announced in Cantley v. Gulf Production Co., 135 Texas 339, 143 S. W. (2d) 912, and other decisions, it should be presumed that the grantor intended to include the small strips in the conveyance.

■ The contention cannot be sustained. The area owned by Parmelia Turner and not included within the metes and bounds set out in her deed to Roberson is not a long narrow strip or strips. It is substantial in size and irregular in shape, having for its east boundary Wiltshire creek which bends to the east and gives to the excluded area a maximum width of about 197 feet. There is neither patent nor latent ambiguity to justify the consideration of extrinsic facts or circumstances in aid of the description contained in the deed. The rule invoked by defendants in error in one of construction to which resort is had only when uncertainty or ambiguity as to the land intended to be conveyed appears on the face of the deed or when the effort to apply the description to the ground gives rise to ambiguity. If there is no ambiguity there is no occasion for construction, and the description speaks for itself. Davis v. George, 104 Texas 106, 110, 134 S. W. 326; Thompson v. Langdon, 87 Texas 254, 258, 28 S. W. 931; Wilson v. Giraud, 111 Texas 253, 263, 231 S. W. 1074; Gill v. Peterson, 126 Texas 216, 223, 86 S. W. (2d) 629; Humble Oil & Refining Co. v. Ellison, 134 Texas 140, 146, 132 S. W. (2d) 395.

In Cantley v. Gulf Production Co., 135 Texas 339, 143 S. W. (2d) 912, and the authorities which it cites, there was uncertainty because the deed called for a road or a street or a railway right of way as a boundary without by express words indicating whether the grantor intended to convey or to reserve the fee that he owned in the road, street or railway right of way. In Shell Petroleum Corporation v. Landers, 107 S. W. (2d) 509, (application for writ of error refused) the rule was applied as an aid in resolving an ambiguity, a conflict between course and distance, that arose when the field notes were applied to the ground.

There is no ambiguity in that part of the deed from Parmelia Turner to Benjamin Roberson which describes the east line of the land conveyed. It is a straight line extending south from the northeast corner of the tract 80 rods to a corner. The creek is not made a boundary and there is no call for the creek.

Defendants in error argue that ambiguity arises when the description is applied to the ground, in that the east line falls in part east of the creek and that the deed thus includes two small strips of land east of the creek to which Parmelia Turner had no title. This argument erroneously assumes that the east line of the tract conveyed by Parmelia Turner to Roberson extends south from the southeast corner of the Louis Robinson tract instead of from a point 79 feet west of that corner as found by the trial court. The line running south from the 79 feet point does not include within the 37-acre tract land east of the creek not owned by Parmelia Turner.

There are presented for decision two questions relating to defendant's in error's claim of title to the 4.4 acres in controversy by adverse possession on the part of Benjamin Roberson when he had title to the 37-acre tract from 1883 to 1905. These questions arise from the trial court's findings that Benjamin Roberson did not adversely claim the 4.4 acres and that he did not use, cultivate or enjoy the 4.4 acres independently from his use, cultivation and enjoyment of the 37 acres and from the holdings of the Court of Civil Appeals that the first of the trial court's findings was without any evidence to support it and that the second of them was immaterial.

The trial court made, among others, the following findings of fact:

## "V.

"After Ben Roberson bought the 37 acres, he resided on it until he sold it in 1905. He fenced it on the north and south lines, about the time he bought it. There was then a fence all along the west portion of the Wily land which fence extended substantially along the west line of the Wily land, but on the east side of the creek and a small distance from the creek. When Ben Roberson constructed his fences on the north and south lines of his 37 acres, he extended these fences to the Wily fence from his northeast corner and from his south east corner, and never constructed any fence on the east line of his 37 acre. It is apparent, from all of the facts and circumstances, that Ben Roberson attached his fences from his northeast corner and southeast corner of the Wily fence for his convenience in enclosing his land, and not to claim title to the land to this Wily fence. The evidence shows that at least one time while he lived on the 37 acres, Ben Roberson helped to repair or reconstruct the Wily fence; and Ben Roberson used this fence in this way to enclose his land during all of the time he lived on the 37 acres.

## "VI.

"It is apparent from all of the evidence, that Ben Roberson while he lived on this 37 acres, having no fence on his east line, but using the fence on the Wily land across the creek from a part of his 37 acres, at times probably cultivated across his line at places on to portions of this 4-4/10 acres of land; but the greater weight of the credible testimony fails to show that he ever intended at any time to claim title or that he actually held and claimed adverse possession of this 4-4/10 acres, or any part of it; but on the other hand, it was merely within the enclosure with his 37 acres by reason only of his having extended his fences to attach them to the Wily fence for his convenience. * * *

\* \* \* · \* \* \* \* \* \*

"Most all of this 4-4/10 acres is low, wet natured land, subject to over-flow in heavy rains, and was mostly covered with growing timber and brush and under-growth during all of the time until 1936, when a part was cleared out and an oil well drilled on it by Taubert and McKee, defendants herein.

\* \* \* \* \* \* \* \* \*

"It is concluded by the court, from all of the testimony and circumstances in relation thereto that none of the parties owning and having possession of the 37 acres of land conveyed to Ben Roberson by Parmelia Turner and husband, since such conveyance, either alone or in privity of title together with any other owner of the 37 acres, held adverse and peaceable possession with claim of title to the 4-4/10 acre tract for any continuous period of ten years. While there was testimony pro and con as to the nature and extent of possession by different owners of the 37 acres tract as to this 4-4/10 acres lying outside of the 37 acres, and some testimony to the effect that certain owners of the 37 acres had possesison of and claimed title to this additional 4-4/10 acres, it is apparent to this court, from all of the facts and circumstances in evidence, that the thought of claiming title to any more than the 37 acres never occurred to any of them until after the oil field began to extend in development in that vicinity about 1934 or 1935. Taubert and McKee were permitted to drill and complete an oil well on this land without interruption, altho it was immediately joining the lease held by E. R. Stewart, et al, and on which they (Stewart et al) had already drilled producing wells."

While there is testimony that Benjamin Roberson did claim all of the land enclosed with the 37 acres that he owned, there is in our opinion evidence in the record sustaining the trial court's findings that he did not adversely claim the 4.4 acres for which this suit is brought.

Benjamin Roberson went into possession, claiming under the deed from Parmelia Turner which conveyed to him the 37-acre tract and did not convey the 4.4 acres to the east of that tract. He lived on the 37 acres and cultivated it. When Roberson acquired the 37 acres there was a rail fence a short distance east of the creek following in general the meanders of the creek in a northerly and southerly direction, which fence was built and owned by Wiley, the owner of the land east of the creek, or by Tucker, who was Wiley's vendee. Roberson built rail fences along the west, north and south lines of his 37-acre tract and, with permission or acquiescence on the part of Wiley or Tucker, extended his rail fences along his north and south lines across the creek and joined them with Wiley's or Tucker's fence east of the creek, so that Roberson had within his enclosure the 37 acres which he had acquired by deed from Parmelia Turner and also the 4.4 acres in controversy herein. Most of the 4.4 acres, that lying west of the creek, be-

longed to Parmelia Turner, and a small part of it, that lying east of the creek, belonged to Wiley or Tucker. Later the rail fence along the east side of the creek was torn down and a wire fence built in its place by Tucker, but after the wire fence was built Roberson's fences along his north and south lines remained connected to it and the 4.4 acres remained in Roberson's enclosure.

■ It is true, as held by the Court of Civil Appeals, that from actual possession of land evidenced by fences enclosing it a presumption arises that it is adversely claimed by the person in possession. Thompson v. Richardson, (Com. App.) 221 S. W. 952; Boy v. McDowell, 207 S. W. 937. But the presumption, like other presumptions of fact, may be rebutted. Boy v. McDowell, 207 S. W. 937, 938; Hartman v. Huntington, 11 Texas Civ. App., 130, 32 S. W. 562 (application for writ of error refused). Judge Williams, referring in the case last cited to the presumption or inference of hostile claim drawn from proof of possession, said: "This inference prevails unless something else is shown to qualify and explain the possession."

Evidence in this case qualifies and explains Benjamin Roberson's possession of the 4.4 acres and in our opinion clearly tends to prove that his possession of that part of the area within the enclosure was not hostile to the owner. Benjamin Roberson went into possession under a deed conveying the 37-acre tract. He made his home on that tract and cultivated it. If cultivation by him extended from his 37-acre tract onto the 4.4 acres, it was only occasional and on but small parts of the 4.4 acres. Most of that area was low, wet land, subject to overflow in heavy rains and covered by growing timber and brush.

It is apparent from the manner in which the fences were constructed and maintained that the area in controversy fell into Roberson's enclosure only because there was a fence east of the creek that he could conveniently use with permission of its owner to complete his enclosure and thus avoid the expense and labor of building a fence along his east line. The inclusion of the small quantity of land along the creek was of little consequence, as the greater part of it was unfit for cultivation, being subject to overflow and overgrown with timber and brush.

■■ It is not shown that Benjamin Roberson ever built any improvements on the 4.4 acres. There is no evidence that Roberson ever paid taxes on the land in controversy or on any other

land than that described in his deed. It was stipulated on the trial that neither Ben Roberson nor his heirs paid any taxes on the land after 1905. When Roberson sold and conveyed the 37-acre tract he used for description in the deed to his vendee the same description as that contained in the deed by which he had acquired the land from Parmelia Turner. There is no evidence of a sale or conveyance of the 4.4 acres from Roberson or his heirs or anyone until the deeds were made by Roberson's heirs to defendants in error in 1937, after land adjoining or nearby had been developed for oil. It has been held that evidence of failure to pay taxes is admissible as a circumstance tending to prove that land is not adversely claimed. Webb v. Lyerla, 43 Texas Civ. App., 124, 94 S. W. 1095; Harris v. Wagnon, 148 S. W. 606; Manning v. Standard Oil Company of Kansas, 67 S. W. (2d) 919; Lynch Davidson & Co. v. Beasley, 128 S. W. (2d) 877, 879. It is held further in Manning v. Standard Oil Company of Kansas, supra, that abandonment of possession and failure thereafter over a long period of years to assert adverse claim, while not conclusive as to the hostility of the prior possession, are facts of evidentiary force to show that the possession was not hostile.

■ Roberson's possession of the land lying east of the creek was not hostile to Wiley and Tucker, the owners of that land, because it was with their consent or acquiescence that he tied his fences to their fence and enclosed a small part of their land. West Production Co. v. Kahanek, 132 Texas 153, 121 S. W. (2d) 328. His possession of the land belonging to Parmelia Turner was in the manner of its taking not different from his possession of the Wiley-Tucker land. It is not shown that he had permission from Parmelia Turner to enclose her land by extending his fences, but her land was casually enclosed by the extension of Roberson's fences to the Wiley-Tucker fence, which would not have been made but for permission given by Wiley or Tucker. It is not reasonable to assume that possession of the small area thus taken was in part hostile and in part not hostile. We believe, as the trial court believed, that the fair and reasonable inference from all of the facts is that possession of all of the small area in controversy was taken and maintained as a convenient way of making use of the fence east of the creek and without an intention to claim title adversely to the owner of the land.

■ Defendants in error to establish limitation title were required to prove cultivation, use or enjoyment of the land as

well as possession and adverse claim. Article 5510, Revised Civil Statutes of 1925; Peden v. Crenshaw, 98 Texas 365, 370, 84 S. W. 362; Dunn v. Taylor, 102 Texas 80, 86, 113 S. W. 265; Hardy v. Bumpstead, (Com. App.) 41 S. W. (2d) 226, 76 A. L. R. 1488. "The statute requires the cultivation, use or enjoyment of land, and this is essential to the 'actual, visible appropriation' which constitutes adverse possession." Dunn v. Taylor, 102 Texas 80, 86, 113 S. W. 265.

We agree with the conclusion expressed by the Court of Civil Appeals that the question whether Benjamin Roberson actually cultivated, used or enjoyed the 4.4-acre area was under the evidence, an issue of fact and that the trial court's finding that he did not cultivate, use or enjoy it is, if material, conclusive against defendants in error upon the question of their asserted title by limitation. We do not, however, agree with that court's decision that the finding is immaterial. It is material and controlling unless Roberson's cultivation, use or enjoyment of the 37-acre tract that he owned is to be regarded as in effect cultivation, use or enjoyment of the 4.4-acre area. In our opinion it cannot be given that effect.

In Harmon v. Overton Refining Co., 130 Texas 365, 372, 109 S. W. (2d) 457, 110 S. W. (2d) 555, it is said:

"It is well settled that when one enters into possession of land under a deed his possession is referable to the deed, and is presumed to be in conformity with it, and is confined to the limits thereof. Therefore, in order for a vendee to acquire title by adverse possession of additional or adjoining land outside the limits of the boundaries in his conveyance, he must have actual possession of such additional land of such character as of itself will give notice of an exclusive adverse possession and mature into title after the statutory period."

It is actual possession that gives notice of the adverse claim, but the recorded deed aids the possession as a means of notice and affords information as to the character and extent of the claim of possession. Holland v. Nance, 102 Texas 177, 183, 114 S. W. 346; Roseborough v. Cook, 108 Texas 364, 366, 194 S. W. 131; Houston Oil Company of Texas v. Wm. M. Rice Institute, 194 S. W. 413; Simonds v. Stanolind Oil & Gas Co., 134 Texas 332, 114 S. W. (2d) 226, 136 S. W. (2d) 207. Most of the authorities holding that possession is referable to the deed under which it was taken, for the purpose of determining the extent of the claim, are cases in which the grantee has

taken actual possession of one only of two adjacent tracts conveyed by deed. Generally it is held in such cases that possession of one of the two adjacent tracts is extended by construction to all of the land included in the deed. Allen v. Bogges, 94 Texas 83, 58 S. W. 833; Houston Oil Company of Texas v. Wm. Rice Institute, 194 S. W. 413. But the rule has its limitations. Under certain circumstances that need not be discussed here actual possession of one tract does not give constructive possession of another adjacent tract conveyed by the same deed. Turner v. Moore, 81 Texas 206, 16 S. W. 929; Simonds v. Stanolind Oil & Gas Co., 134 Texas 332, 336-341, 114 S. W. (2d) 226, 136 S. W. (2d) 207.

When Roberson's possession is referred to the deed from Parmelia Turner under which he went into possession, the 4.4-acre area is excluded and his possession is confined to what he owned and actually used. Nothing stands in the way of looking to the deed except the inclusion of the small area within the enclosure. In our opinion the deed affords better and more reliable evidence of the extent of Roberson's claim than does the possession evidenced solely by the enclosure casually created by the extension of Roberson's fences, merely for his convenience, to the Wiley-Tucker fence. The facts of the instant case differ in some particulars from those in Harmon v. Overton Refining Co., 130 Texas 365, 109 S. W. (2d) 457, 110 S. W. (2d) 555, but we believe that the well settled general principle which has been quoted above from the opinion in that case should control this case and that Roberson's possession should be presumed to be in conformnity with the deed under which he entered into possession of the land and should be "confined to the limits thereof." Since he did not have actual possession of the additional land of such character that it of itself gave notice of exclusive adverse possession, he did not by his use of the land described in the deed mature title to the additional land.

Defendants in error cite Washam v. Harrison, 122 S. W. 52, Rigell v. Atherton, 107 S. W. 129, and Carlock v. Willard, 149 S. W. 363, as holding that continuous use of part of a lot or tract of land gives constructive possession to the whole. The facts of those cases are not like those of the instant case. In none of them did the person in possession holding under a deed seek, by use of land included in the deed, to recover title

to additional land not included in it, and in none of them was possession of the additional land evidenced merely by its casual enclosure.

Under propositions not discussed by the Court of Civil Appeals defendants in error rely for limitation title upon possession by Florey, Pace and Bateman, successors in title to Roberson. But their possession was not sufficient because it was substantially the same as Roberson's possession. The deeds to them contain the same description as the description in Roberson's deed; the facts tend to prove that they did not adversely claim the small area in controversy until a short time, less than ten years, before the institution of this suit, and their use of the land, while sometimes not continuous, was of the same nature and extent as that made by Roberson.

Defendants in error of the assignments and propositions in their brief in the Court of Civil Appeals attacked the controlling fact findings made by the trial court, as contrary to the undisputed evidence or as not supported by any evidence, and the Court of Civil Appeals held that certain of the trial court's findings were contrary to the undisputed evidence or without evidence to support them or were immaterial, thus deciding questions of law.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court May 13, 1942.

Rehearing overruled June 10, 1942.