Robert HEJL, Appellant,

v.

Anna K. WIRTH et al., Appellees.

No. 10730.

Court of Civil Appeals of Texas.

Austin.

Feb. 24, 1960.

Rehearing Denied March 16, 1960.

Charles G. Trenckmann, Austin, for appellant.

Emmett Shelton, Austin, for appellees.

ARCHER, Chief Justice.

This is a trespass to try title suit in the nature of a boundary dispute.

This suit was instituted by the appellees against appellant for the title and possession

of a tract of 240 acres out of the Walker Wilson Headright League No. 2 on the waters of Bear Creek in Travis County, Texas, describing the land as being the same property conveyed to Fritz Wirth by August Meyer by deed dated September 20, 1903, recorded in Vol. 180, pages 90–93, and setting out a description beginning in the bed of Bear Creek, with courses and distances, the last such call being "to the bed of Bear Creek"; thence in a southerly direction with the channel of Big Bear Creek until it strikes the channel of Little Bear Creek; thence in an easterly direction with the channel of Big Bear Creek to the place of beginning.

By trial amendment, the description of the land sued for was 72 acres with courses and calls, briefly, beginning in the bed of Big Bear Creek, thence north 1,330 varas; thence west about 610 varas to corner in the bed of Big Bear Creek; thence down the channel of said creek to a corner about 40 varas below the mouth of Little Bear Creek; thence southeast with the said Big Bear Creek about 510 varas to the place of beginning.

The defendant filed his plea of not guilty, plea of limitation and disclaimed as to a portion of the land sued for, leaving in question a small tract of about 6 acres lying between the call of S. 38 E. 560 varas and the actual meanders of the creek, the call approximating the sinuosities of the creek.

Trial was had with a jury and at the conclusion of the evidence each party moved for an instructed verdict and defendant's motion was overruled and plaintiffs' was granted and judgment rendered for plaintiffs.

The prime question for determination is the construction of the last call in the deed from J. M. Hodge to G. E. Miller dated May 31, 1878 conveying the 72-acre tract. The description calls to begin in the bed of Bear Creek, thence north 1,330 varas, thence west 510 varas to corner in bed of Bear Creek, thence down the same to corner in the same about 40 varas below the mouth of Little Bear Creek, *thence South 38 E. 560 vrs. to the beginning.*

In all subsequent deeds the last call is: Thence with Big Bear Creek course 30 deg. east 560 varas (by reference in some of the deeds).

The deed to Fritz Wirth from August Meyer dated September 28, 1903, duly recorded in the records, the description of the 72-acre tract is beginning in the bed of Bear Creek, thence by course and distance and creek calls, the last call being: Thence southeast with the said Big Bear Creek about 560 varas to the place of beginning.

In a deed from John M. Hodge to B. D. Alexander dated November 23, 1900, conveying the land claimed by the defendant by subsequent deeds, the description begins at the S. E. corner of a 450-acre tract, thence north 340 varas to corner in the bed of Bear Creek (this is the S. E. corner and beginning of the description of the 72 acre tract), thence up said creek N. 38 west 560 varas to point in bed of Bear Creek.

It is to be noted that this is the same course and distance as the course and distance in the Hodge to Miller deed in reverse.

In the deed from the heirs of George Dallas to the Veterans' Land Board dated January 15, 1950, is the call: "Thence up said creek North 38 degrees West 560 varas to point in bed of creek."

The first time the course and distance call of South 38 degrees East 560 varas is used, the beginning is in the bed of Bear Creek and the ending is to the place of beginning, which was in the bed of Bear Creek.

We insert herein a plat of the area depicting the creek meanders, the old fence line and the line as laid out by appellant's surveyors:

■ We believe that the disputed course and distance call is a meander call.

In Strayhorn v. Jones, 157 Tex. 136, 300 S.W.2d 623, 631, Justice Griffin went into an exhaustive discussion of meander calls and in quoting from an earlier case said:

"It was stated by this Court in the case of Stover v. Gilbert, 1923, 112 Tex. 429, 247 S.W. 841, with regard to whether or not course and distance calls meandering the Brazos River were the limits of the tract conveyed, or whether the tract was bounded by the Brazos River, as follows:

"'* * * It is a rule of general acceptation that meander lines of surveys of land adjacent to or bounding upon a stream are not to be considered as boundaries, but they are to follow the general course of the stream, which in itself constitutes the real boundary * * *.

"'The rule is concisely stated in Corpus Juris, book 9, p. 189, as follows:

"'"The general rule adopted by both state and federal courts is that meander lines are not run as boundaries of the tract surveyed, but for the purpose of defining the sinuosities of the banks of the stream or other body of water, and as a means of ascertaining the quantity of land embraced in the survey. The stream, or other body of water, and not the meander line as actually run on the ground, is the boundary, the purpose of meander lines being merely for the benefit of the government in ascertaining the quantity of land in the survey for which it requires payment."

"'In Ruling Case Law, book 4, p. 97, the same rule is expressed in this language:

"'"In surveying land adjacent to a stream, whether navigable or not, lines are often run from one point to another along or near the bank or margin of the stream, in such a manner as to leave a quantity of land lying between these lines and the thread or bank of the stream. These are called meander lines, and they are not the boundaries of the tract, but they merely define the sinuosities of the stream which constitute the boundary, and as a general rule the mentioning in a deed or grant of a meander line on the bank of a river as a boundary, will convey title as far as the shore unless a contrary intention is clearly apparent."' * * *

"Another good reason for extending the title of grantees to the bed of the stream is that they might be able to enjoy the riparian rights which they are entitled to by virtue of owning land adjoining the river. These rights are discussed in Motl v. Boyd, 1926, 116 Tex. 82, 286 S.W. 458, 467; American Law of Property, Vol. III, Sec. 12.32, pp. 265, et seq.; Kinney on Irrigation and Water Rights, 2d Ed., Vol. 1, p. 549, Secs. 334, et seq.; 65 C.J.S., Navigable Waters, § 122, p. 255."

In 26 C.J.S. Deeds § 106, p. 903, it is stated:

"It is a general rule that upon the conveyance of property the law implies a grant of all the incidents rightfully belonging to it at the time of conveyance and which are essential to the full and perfect enjoyment of the property."

In State v. Atlantic Oil Producting Co., Tex.Civ.App., 110 S.W.2d 953, 957, er. ref., this Court held that:

"'* * * Thence South 32 West 200 vrs; etc.,' thus using the same language for 33 meander calls to the southwest corner of the survey, admittedly on the river, likewise imports a meaning that the language 'with said river' was intended to apply to each succeeding call. This contention is

given much force by the fact that such succeeding calls so nearly follow the course of the stream. However this may be, we think the undisputed facts and circumstances shown by the State bring this case within the well-settled rule that where a survey is made upon a stream, and this one undoubtedly was, and the course of the stream is meandered by course and distance calls only, without establishing a traceable marked line to evidence a different purpose on the part of the surveyor, and a grant made by course and distance calls, the course of the river and not the meander line becomes the boundary. In such case the meander line is deemed fixed for the purpose of determining area of the tract, rather than as defining the exact boundary of the grant. This rule is clearly laid down in Texas in an analogous case in Stover v. Gilbert, 112 Tex. 429, 247 S.W. 841. See, also, Greene v. U. S. (C.C.A.) 274 F. 145; Mitchell v. Smale, 140 U.S. 406, 11 S.Ct. 819, 35 L.Ed. 442; 8 Am.Jur. §§ 29 and 33, pp. 766 and 770, and numerous cases cited from various jurisdictions in support thereof; also 7 Tex.Jur. § 21, p. 139. And when, as here, the purpose of the meander calls is clear, there remains no fact question to be determined by a jury, but the question of whether the river, rather than the course and distance lines, constitute the boundary, is one of law for the court."

The plea of limitation to the tract of land was not supported by the evidence sufficiently to show an exclusive use and occupancy of the tract.

The appellant has summarized the evidence and we will also summarize it since the record is long.

The testimony tendered by appellant in support of his title by limitation was given by three aged colored men; the first witness was Roy Dodson who testified that he had lived in the vicinity of the land involved in this case for seventy-two years and was acquainted with former owners of the lands claimed by appellant and appellee; that during a period of sixty-five years he had visited the creek bottom from four to thirty times a year and that the bottom was used to graze livestock and get water; that the use had been pretty much the same; that the livestock belonged to Mr. Hodge, Dr. Alexander, Dave Rucker, George Dallas and their renters; that to the witness' knowledge the Wirths never ran nor grazed any stock in the bottom; that the bottom was used to hunt and fish. The witness pointed out how the old fence ran.

John Rucker testified that David Rucker, his daddy, owned a farm at Little and Big Bear Creeks; that there was a fence that commenced on a bluff on the northeast side of the creek and went in a fairly straight line; that he saw his father repair the fence and saw stock grazing on the disputed tract.

Jim Dallas testified that he was eighty-one years of age and that he first went to the bottom when he was thirteen years of age and that the fence ran pretty much in a straight line from near the mouth of Little Bear Creek to the lower end of Hodge Hole; that sometimes his father fixed the fence and sometimes Wirth fixed it, whichever one found the fence down after a washout.

Neal Meredith, called by appellee, testifying, said that the fence was replaced by Mr. Wirth and that he heard Mr. Wirth and old man Dallas agree that Dallas could water his stock if he would keep the fence up.

■ We do not believe the usage by the prior owners of the Dallas, Rucker and Hejl land was an exclusive use of the small tract. The evidence is that the use of the land was in common with others, and we do not believe that fishing and hunting upon land is a sufficient usage. Considering the

evidence of appellant in its most favorable light, there is not shown cultivation, use or enjoyment of the land, as well as possession thereof and adverse claim thereto so as to meet the statute. Article 5510, Vernon's Ann.Civ.St. McKee v. Stewart, 139 Tex. 260, 162 S.W.2d 948, Com. of App., Sec. B, opinion adopted by the Supreme Court.

In West Production Co. v. Kahanek, Tex. Com.App., 132 Tex. 153, 121 S.W.2d 328, 331, opinion adopted by the Supreme Court, it was held:

"Where the character of use of inclosed land, by a claimant of adverse possession, is not such as to constitute, of itself, an actual and visible appropriation of the land, it may be safely said that such use cannot be aided by a fence which casually created the inclosure, and to the construction of which fence neither the claimant of adverse possession nor any person under whom he claims has contributed."

■ Complaint is made of the overruling of a plea in abatement made by the defendant because the Veterans' Land Board was not made a party to the suit. It was not error to overrule the plea in abatement because the defendant, appllant herein, claimed to be in possession of the land sued for and was the only necessary party and a valid decree can be rendered.

Rule 39, Texas Rules of Civil Procedure; McDonald v. Alvis, 154 Tex. 570, 281 S. W.2d 330.[1]

■ Since we believe the call in question in this case is a meander call within the meaning of the general rule and, as set out in the cases herein quoted and cited, the question of whether the creek, rather than the course and distance line, constitutes the boundary is one of law for the Court.

The judgment of the Trial Court is affirmed.

Affirmed.

GRAY, Justice (dissenting).

The majority concludes that the last call in the Hodge-Miller deed "Thence South 38 E. 560 vrs. to the beginning" is a meander call and that the approximately 6 acres of land lying between this line and Bear Creek is as a matter of law included within the description contained in that deed. I do not agree with this holding and to the extent only of the proper location of the above line I note my dissent.

A meander line is one that follows the winding or flexuous course of a stream. See Words & Phrases, Vol. 26–A, Meander Line, p. 550. Here the call is not "thence with Bear Creek," "thence up Bear Creek" or "thence down Bear Creek" but it is simply "thence South 38 E. 560 vrs. to the beginning." The 72 acres of land in question was conveyed by Hodge to Miller out of a larger tract then owned by Hodge. There is nothing in this record to show that the line in dispute was not in fact intentionally placed, if in fact it was not surveyed, at the location and on the course where the deed calls it to be. Further there is no contention that the description contained in the Hodge-Miller deed does not in fact describe and embrace 72 acres of land. There is neither ambiguity nor uncertainty in the call in question nor in the description of the 72 acres of land conveyed by Hodge to Miller. This being true there is no occasion for construction "and the description speaks for itself." McKee v. Stewart, 139 Tex. 260, 162 S.W.2d 948, 950. The facts and dispute in that case are similar to the facts and dispute here and the holding there is controlling here.

There could have been many reasons why Hodge, the owner of the larger tract, or

---

1. Booty v. O'Connor, Tex.Civ.App., 13 S.W.2d 220, affirmed Brooks v. O'Connor, 120 Tex. 121, 39 S.W.2d 22; Rule 784, T.R.C.P.

Miller, the purchaser of the 72 acres, or both of them, elected to locate the line as it is called for. However such reasons, as conceivably there may have been, would be speculation here. Suffice it to say that in my opinion a court should never place its construction on the acts of parties unless ambiguity, uncertainty or other valid reasons compel such construction.

I would reverse the judgment of the trial court and here render judgment for defendant.

On Appellant's Motion for Rehearing

PER CURIAM.

We have carefully considered appellant's motion for rehearing and in doing so have studied the case of Dutton v. Vierling, 152 S.W. 450, by this Court, opinion by Chief Justice Key. In that case the court stated and applied the rule upon which we base our opinion. It is taken from St. Clair County v. Lovingston, 23 Wall. 46, 59, 90 U.S. 46, 59, 64, 23 L.Ed. 59, and reads:

"It may be considered a canon in American jurisprudence that where the calls in a conveyance of land are for two corners at, in, or on a stream or its bank, and there is an intermediate line extending from one such corner to the other, the stream is the boundary unless there is something which excludes the operation of this rule by showing that the intention of the parties was otherwise."

The pertinent call here runs from one point in a stream to another point in the same stream. There is nothing in the grant nor in the circumstance surrounding the grant which excludes the construction that the stream should be the boundary. We believe it is and, accordingly, overrule the motion for rehearing.

Overruled.